VINTON H. PARKER ET UX. *v.* F. L. CONE ET AL.

Special Term at Montpelier, March, 1932.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and SHERBURNE, Supr. J.

Opinion filed May 4, 1932.

*Raymond Trainor, Marvelle C. Webber* and *Alban J. Parker* for the defendants.

*Frank E. Barber* and *C. Menzies Miller* for the plaintiffs.

THOMPSON, J. This is an action of trespass brought under the provisions of G. L. 6956, for the recovery of treble damages for cutting and removing timber from plaintiffs' farm, called the Hubbard Farm, during the winters of 1928-1929 and 1929-1930.

There was a trial by jury. The jury returned a general and special verdicts for the plaintiffs, on which the court rendered a judgment for treble damages. The defendants excepted severally.

Neither of the defendants now question the general verdict so far as it found that the timber was cut and removed from plaintiffs' farm without their leave, and the actual damages.

Defendant Cone moved for a directed verdict at the close of the evidence. The substantial ground of the motion is that there is no evidence which connects him personally with cutting and removing the timber from plaintiffs' farm. The motion was overruled and he was allowed an exception.

In April, 1928, defendant Cone purchased the Weston farm which lies northerly of and adjoining the Hubbard farm. He owned it until July, 1929, when he conveyed it to Weston Heights, Inc., a corporation, hereinafter called the Corporation, of which he was and is the president and principal stockholder. The Corporation has since owned and operated the farm. At all times material it owned and operated a sawmill on the farm which it built before any of plaintiffs' timber was cut. Defendant Gould was the superintendent of the Corporation and, as such, operated the Weston farm and managed the lumbering operations of the Corporation. He had owned both farms, the Weston farm from 1915 to 1928, and the Hubbard farm from 1918 to 1926.

The timber on plaintiffs' farm was cut and removed under the personal direction and supervision of defendant Gould. The plaintiffs tried their case on the theory that Gould cut and removed the timber as Cone's agent, and that Cone, as principal, was personally liable for Gould's acts. Cone denies that the relation of principal and agent existed between him and Gould, and claims that Gould acted as the agent of the Corporation, and not as his agent.

Both defendants were called as witnesses by the plaintiffs when putting in their opening case, and all the evidence of the relation that existed between them in the lumbering operations is found in their testimony given in direct examination and cross-examination at that time. Their testimony is not contradicted. The following facts appear from the same: The Corporation started lumbering operations on the Weston farm in

the fall of 1928. Cone did not know the location of the line between the Weston and Hubbard farms. He, as president of the Corporation, directed Gould, as superintendent thereof, to take charge of the operations, and to cut timber on the Weston farm only, he then having in mind that Gould had formerly owned both farms. Thereafter, Gould, as such superintendent, had complete charge of the operations both in that winter and the following winter. He hired teams, hired and fired the men, and told the men where and what to cut. Timber was cut on both farms in both winters. All of the timber was taken to the mill of the Corporation where it was sawed. Some of it was used for repairs on the Weston farm, some was sold, and some remains in the mill yard. The Corporation received the pay for all that was sold. Cone did not learn that timber had been cut on plaintiffs' farm until the latter part of December, 1929, or in January, 1930, when plaintiff Vinton Parker informed him of that fact. No timber was cut on the Hubbard farm after that time.

The only conclusion that can be drawn from this evidence is that Gould cut the timber on plaintiffs' farm as the agent of the Corporation, and not as the agent of Cone. The plaintiffs say that on the question as to whether Gould was agent for Cone there is the undisputed evidence that Cone was the owner of the Weston farm in the winter of 1928-1929, and that Gould received his instructions from Cone. The undisputed evidence is that Cone gave the instructions to Gould while acting in his capacity as president of the Corporation; that the Corporation was the principal in the lumbering operations, and Gould was its agent. The plaintiffs concede that such was the capacity in which Gould acted. They say in their brief: "The evidence of both defendants, both as plaintiffs' witnesses and as witnesses for the defense, tended to prove that the lumbering operations referred to above were superintended by Gould as the agent of the corporation, Weston Heights, Inc. In fact there is no countervailing evidence and the contention may be taken as undisputed."

The plaintiffs say further that defendant Cone is liable as principal for the trespasses committed by Gould, because he ratified Gould's tortious acts. The act of ratification relied upon is that when plaintiff Vinton Parker told Cone that Gould

had cut timber on plaintiffs' farm, the latter replied that ''he, Cone, was going to stand back of Gould.''

    A rule of ratification is that the alleged principal must not only know what has been done, but that it was done for him. *Livingston Mfg. Co.* v. *Rizzi Brothers,* 86 Vt. 419, 423, 85 Atl. 912. In *New England Dredging Company* v. *Rockport Granite Co.,* 149 Mass. 381, 21 N. E. 947, 948, Mr. Justice Holmes said.: ''The meaning of ratification is, and always has been, the adoption of an act purporting to be done, or, at least, done in fact, on behalf of the ratifier.'' What Cone said to Parker would not be a ratification of Gould's tortious acts so as to make him personally liable for them unless they were done or purported to be done on his behalf.

    The Corporation was the principal in the lumbering operations and Cone and Gould were its agents. Cone, as president of the corporation, was the superior agent who gave the instructions to Gould, the subordinate agent, whose duty it was to carry out such instructions. The law is that under such circumstances the relation of principal and agent did not exist between them, and Cone is not personally liable for torts committed by Gould while carrying out his instructions unless he specifically directed them to be done or participated or cooperated therein. *Brown* v. *Lent,* 20 Vt. 529; *Davenport* v. *Newton,* 71 Vt. 11, 21, 42 Atl. 1087; *Arnold* v. *Somers,* 92 Vt. 512, 522, 105 Atl. 260; *Folwell* v. *Miller* (C. C. A.), 145 Fed. 495, 10 L. R. A. (N. S.) 332, 7 Ann. Cas. 455.

    Cone did not direct Gould to cut the timber on plaintiffs' farm. He did not participate or cooperate in the cutting, and he did not know about it until after the timber had been cut and removed. Gould cut the timber as the agent of the Corporation and on behalf of it, and the Corporation had all of the timber. If the action had been against the Corporation, it might well have been claimed that what Cone said to Parker was a ratification of Gould's acts by the Corporation; but that question is not in the case. What Cone said to Parker was not such a ratification of Gould's tortious acts as to make him personally liable for the same. There is no evidence in the case tending to show personal liability on the part of Cone, and the trial court erred in overruling his motion for a directed verdict.

The jury returned a special verdict that Cone did not act through mistake or have good reason to believe that the timber was cut on the Weston farm. He was allowed an exception to the overruling of his motions to set aside the general verdict and the special verdict, an exception to the judgment for treble damages, and an exception to the finding by the court that the cause of action arose from the wilful and malicious acts of the defendants and that they ought to be confined in close jail.

It is not necessary to consider these several exceptions as briefed by defendant Cone, as the disposition of them is controlled by what we have already said when considering his motion for a directed verdict. All of these exceptions are sustained.

The only exception briefed by defendant Gould is that, as to him, the trial court erred in finding, as a basis for a close jail execution, that the cause of action arose from the wilful and malicious acts of the defendants.

The plaintiffs were entitled under the statute to recover treble damages against this defendant unless it appeared, upon trial, that he acted through mistake or had good reason to believe that he had a right to cut the timber in question, in which event they could recover single damages only. Gould's defense was that he cut the timber through mistake or had good reason to believe that he had a right to cut it. The burden was on him to establish this defense. *Davis* v. *Cotey,* 70 Vt. 120, 39 Atl. 628; *Whitman* v. *Lowe,* 98 Vt. 152, 160, 126 Atl. 513. These issues were submitted to the jury and they returned a special verdict that Gould, in cutting the timber did not act through mistake or have good reason to believe that he had a right to cut it.

Gould was allowed an exception to the general verdict, to the special verdict against him, to the judgment for treble damages, and to the overruling of his motion to set the general verdict aside. None of these exceptions have been briefed and are therefore waived; and the general verdict, the special verdict, and the judgment for treble damages stand unchallenged by him in this Court.

The only ground of exception argued is that the evidence shows that he cut the timber through mistake or with good reason to believe that he had a right to cut it. But since the

special verdict against him on those issues stands unchallenged in this Court, it is not for us to review and weigh the evidence on which it is based.

The action is one in which a close jail execution could properly be granted. The defendant concedes that the finding in question is based upon the evidence as disclosed by the transcript. The general verdict having settled the question as to the plaintiffs' right of recovery, and the special verdict having settled their right to recover treble damages against this defendant, the evidence warranted the finding in question. *Whiting* v. *Dow,* 42 Vt. 262; *Melendy* v. *Spaulding,* 54 Vt. 517, 521; *Severance* v. *Gage,* 97 Vt. 33, 36, 121 Atl. 753. The exception is not sustained.

*Judgment affirmed as to defendant Gould, but reversed as to defendant Cone, and judgment for him to recover his costs.*