## Leonard Prive v. Vermont Asbestos Group and Howard Manosh

[992 A.2d 1035]

No. 08-474

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed January 15, 2010

282

*Robert E. Manchester*, Burlington, of Counsel to *Valsangiacomo, Detora & McQuesten, P.C.*, Barre, for Plaintiff-Appellant.

*Andrew K. Braley* and *Gale E. Westgate* of *Primmer Piper Eggleston & Cramer PC*, Burlington, for Defendant-Appellee Manosh.

¶ 1. **Reiber, C.J.** Plaintiff appeals the dismissal of his complaint against defendant Howard Manosh. The original complaint listed Vermont Asbestos Group (VAG) as the only defendant. Plaintiff subsequently filed proposed amendments to his complaint to add as a defendant the president and CEO of VAG, Howard Manosh. Plaintiff stated that Manosh was personally liable for the alleged trespass and nuisance claims. After one of plaintiff's motions to amend was granted, Manosh filed a motion to dismiss to remove his name from the lawsuit and to hold that the entire claim was barred under the applicable statutes of limitations. Plaintiff responded and also filed a second motion to amend the complaint to allege additional facts regarding Manosh's liability. The trial court granted Manosh's motion to dismiss on the grounds that Manosh

could not be held personally liable, thereby removing Manosh as a defendant. The court subsequently denied plaintiff's motion to amend, holding that even if the proposed second amended complaint were allowed, plaintiff failed to allege facts that would make Manosh personally liable. Plaintiff then filed a motion to reconsider and a motion to allow a third amended complaint, and the trial court denied both of these motions. On appeal, plaintiff argues that the trial court did not properly apply Vermont's liberal pleading requirements and committed legal error when it granted defendant's motion to dismiss. We reverse and remand.

¶ 2. Because this appeal arises out of defendant's successful motion to dismiss, "we must assume as true all factual allegations pleaded by the nonmoving party." *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). With this standard in mind, we recount the facts as plaintiff stated them in his first amended complaint.[1]

¶ 3. Plaintiff owns a parcel of land that abuts VAG's former asbestos mine in Eden, Vermont. When plaintiff purchased this land in 1989, it contained wetlands, ponds, and woodlands that supported a wide variety of fish and wildlife, including various species of migratory birds. The ponds and wetlands appeared clean and free from any contamination. In 1992, plaintiff completed construction of an access road and cabin on the land. Plaintiff states in his complaint that he uses the cabin "as a second home and personal retreat" where he can enjoy the "natural beauty and pristine wilderness" of the area.

¶ 4. The VAG asbestos mine was in operation for a number of decades. Manosh was president and CEO of VAG beginning in 1974 and continuing at least through 1993, when the mine ceased operations. By 1993, when the mine became dormant, it had accumulated roughly twelve million tons of waste materials — a mine tailings pile that stands over 300 feet high. This pile of waste materials is apparently still standing today on the VAG property. The pile stands within the watershed of Hutchins Brook.

---

[1] Plaintiff filed an original complaint and three amended complaints with the trial court. The basic facts recounted here are all taken from the first amended complaint, which replaced the original complaint when the trial court granted plaintiff's first motion to amend. Defendant has not filed a cross-appeal to contest that determination, and we therefore "must assume as true all factual allegations" in the first amended complaint. *Amiot*, 166 Vt. at 291, 693 A.2d at 677. Whether to allow the second and third amended complaints is addressed later in this decision.

¶ 5. A tributary to Hutchins Brook flows through VAG's property and then travels downstream into plaintiff's ponds and wetlands. According to plaintiff, beginning in 1993 and continuing at least through the spring of 2007, runoff from VAG's three-hundred-foot pile of waste materials caused contaminated substances to travel through the tributary and onto plaintiff's property. Plaintiff argues that this amounts to a trespass, as well as a nuisance that interferes with (among other things) his enjoyment of the natural beauty of his land.

¶ 6. Plaintiff has taken numerous steps to address the issue of contaminated water runoff. For instance, in 1993, when a dense subsoil deposit filled several of plaintiff's ponds, he contacted VAG and Manosh, and VAG agreed to buy just over ten acres of plaintiff's 169-acre parcel. Plaintiff's remaining property continued to be inundated with subsoil deposits, and, on several occasions beginning around 2001, he rented excavator equipment and used it to remove deposits. Plaintiff alleges that his remediation efforts have so far cost him around five thousand dollars. He claims that future remediation efforts will cost over one million dollars.

¶ 7. In the spring of 2005, as increasing quantities of subsoil deposits continued to invade his property, plaintiff contacted the Vermont Department of Environmental Conservation and requested assistance about how to protect his ponds and wetlands. The department conducted a field investigation and determined that significant asbestos contamination had occurred on plaintiff's property. The department also advised plaintiff that he needed a permit before he could continue to excavate the subsoil deposits on his property. In addition, the department told plaintiff that he should stop using water from the tributary to Hutchins Brook.

¶ 8. During 2006 and 2007, the subsoil deposits continued to build up on plaintiff's property. Plaintiff states in his complaint that by the spring of 2007 these deposits had "completely obliterated" several of his ponds and wetlands and that deposits were also visible beneath his cabin. Fish were dying in his remaining ponds, and he again called the department to request assistance. The department undertook a second investigation, after which it advised plaintiff that his property was covered with visible evidence of asbestos contamination and that he was putting himself at risk of contracting an asbestos-related disease every time he visited his property. The department also concluded that the asbestos contamination likely resulted from the twelve-million-

ton pile of waste materials directly upstream of plaintiff's property.

¶ 9. When plaintiff initially filed suit, VAG was the only listed defendant. Plaintiff later filed an amended complaint to add Manosh as a defendant. The first amended complaint was substantially similar to the original complaint, but it replaced "VAG" with "VAG and Manosh" in several places and added the allegations that "Manosh as President and chief executive officer of VAG was responsible for all actions taken by that corporation" and "during all times material to this action . . . Manosh was the 'operator of a facility' within the meaning of 10 V.S.A. [§] 6615(a)(1)." The trial court granted plaintiff's first motion to amend the complaint.

¶ 10. Manosh then filed a motion to dismiss to remove his name from the lawsuit for failure to state a claim upon which relief can be granted. See V.R.C.P. 12(b)(6). Manosh made two arguments for dismissal: (1) plaintiff's claims failed to allege facts that would make Manosh personally liable for his actions at VAG; and (2) plaintiff's claims were barred by the applicable statute of limitations. In responding to the first argument, plaintiff filed a motion to replace the first amended complaint with a second amended complaint, which included the following additional allegations against Manosh:

> Among other things, at all times material to this complaint, Manosh was and has been the registered agent and sole director of VAG, has since 1974 become the principal shareholder and has acquired a controlling interest in the corporation, and has been found to make all decisions regarding what is left of VAG operations, which are rentals and keeping the property as safe as it can be made. Accordingly, at all times material since 1974, Manosh as chief executive officer for VAG was and has been directly responsible for making all decisions concerning VAG operations including but not limited to maintenance and control of erosion from tailing piles located on VAG's asbestos mine property, and has personally participated on behalf of VAG in all decisions concerning the containment and storage of discarded mining waste as defined by 10 V.S.A. section 6602 subparts (2) and (7), which waste specifically includes [the] asbestos tailing pile.

(Quotations and citations omitted.)

¶ 11. The trial court granted Manosh's motion to dismiss based on plaintiff's failure to allege facts that would make Manosh personally liable for his actions at VAG.[2] The court's decision did not mention plaintiff's proposed second amended complaint. Less than one week later, following a bench rotation, a new presiding judge issued an entry order denying plaintiff's second motion to amend the complaint. This entry order stated that it would be "futile" to allow the second amended complaint since the additional allegations "are *still* insufficient as a matter of law" to state a claim upon which relief can be granted. We disagree.

## I.

¶ 12. Unlike the trial court, we conclude that to determine whether plaintiff's complaint states a claim upon which relief can be granted, see V.R.C.P. 12(b)(6), we first need to know which complaint is at issue. This is not the first time that this Court has addressed the procedural situation in which a plaintiff has filed an amended complaint in response to a motion to dismiss. See *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 3, 184 Vt. 1, 955 A.2d 1082. In *Colby*, as here, the trial court denied the plaintiff's motion to amend. Although our review of a motion to dismiss is de novo, *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.), we noted in *Colby* that "we review the trial court's decision on a motion to amend for an abuse of discretion," 2008 VT 20, ¶ 4. We also held in *Colby* that we begin this analysis with the understanding that "[u]nder the rules of civil procedure, leave to amend the complaint 'shall be freely given when justice so requires.' " *Id.* (citing V.R.C.P. 15(a)). We explained that Rule 15(a) tilts heavily in favor of granting motions to amend:

> In considering motions under Rule 15(a), trial courts must be mindful of the Vermont tradition of liberally allowing amendments to pleadings where there is no prejudice to the other party. The principal reasons un-

---

[2] The court denied Manosh's statute of limitations argument, holding that it required a fact-intensive inquiry and could not be decided on a motion to dismiss. No party has raised a challenge to that part of the decision in this appeal, and we therefore need not consider it. *R. Brown & Sons, Inc. v. Int'l Harvester Corp.*, 142 Vt. 140, 142, 453 A.2d 83, 84 (1982) ("Issues not briefed on appeal are deemed waived.").

derlying the liberal amendment policy are (1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings.

*Id.* (quotations and citations omitted).

■ ¶ 13. We further noted that it is only in "rare cases" that "denial of a motion under Rule 15(a) may be justified based upon a consideration of the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Id.* (quotation omitted). Manosh does not claim (either in the proceedings below or on appeal) that there was any undue delay, bad faith, or prejudice resulting from plaintiff's second motion to amend. The trial court's sole basis for denying plaintiff's second motion to amend was that it would be "futile" to allow the amendment, since even the second amended complaint could not survive a motion to dismiss. But the only way to know whether the second motion to amend is futile is to analyze whether plaintiff's second amended complaint would survive defendant's motion to dismiss. As we stated in *Colby*, even when a plaintiff "has omitted essential elements" from the original complaint, "the rules allow a plaintiff to plead over . . . and require the court to take the plaintiff's [additional] allegations as true on a motion to dismiss." *Id.* ¶ 13. For the reasons discussed below, we conclude here, as in *Colby*, that plaintiff's amendments could survive a 12(b)(6) motion to dismiss and were not, therefore, futile. *Id.* ¶ 9. It was thus an abuse of discretion for the trial court to deny plaintiff's second motion to amend.

## II.

■ ¶ 14. Our review of the trial court's motion to dismiss is de novo. *Bock*, 2008 VT 81, ¶ 4; see also *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 993 (1995) (when trial court rules on motion to dismiss without first holding evidentiary hearing, "trial court must make its ruling as a matter of law, and appellate review is nondeferential and plenary"). In *Colby*, we held that plaintiffs face a "low threshold for withstanding a 12(b)(6) motion to dismiss." 2008 VT 20, ¶ 8. We have since stated that it is an "exceedingly low" threshold and that "[m]otions to dismiss for

failure to state a claim are disfavored and should be rarely granted." *Bock*, 2008 VT 81, ¶ 4. As we stated in *Bock*, "[d]ismissal under Rule 12(b)(6) is proper *only* when it is beyond doubt that there exist no facts or circumstances[,] consistent with the complaint[,] that would entitle the plaintiff to relief." *Id.* (emphasis added).

¶ 15. Further, Vermont Rule of Civil Procedure 8 on pleading "omits the requirement . . . that the facts relied upon be pleaded, requiring instead a short and plain statement of the claim showing that the pleader is entitled to relief." *Bock*, 2008 VT 81, ¶ 5 (quotations omitted) (citing Reporter's Notes, V.R.C.P. 8). The key to whether a complaint is sufficient is notice; the complaint must provide "a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Id.* (quotations omitted) (citing Reporter's Notes, V.R.C.P. 8). We have held that our rules "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped, causes of action and discouraging baseless or legally insufficient ones." *Colby*, 2008 VT 20, ¶ 13. Plaintiffs cannot use lawsuits to go on a fishing expedition. But the rule in this state is that when plaintiffs have not yet had an "opportunity to develop the case" through discovery, *id.*, all that is required is a short and plain statement of the claim. Id. ¶ 7.

¶ 16. Plaintiff's second amended complaint sufficiently alleges facts to put Manosh on notice of the claims of active participation in the torts asserted against him and VAG. See *Bock*, 2008 VT 81, ¶¶ 4-5. For instance, the second amended complaint alleges that Manosh "has been found to make all decisions regarding . . . maintenance and control of erosion from tailing piles . . . [and] containment and storage of discarded mining [hazardous] waste." Aside from a statute of limitations issue that is not before the Court on this appeal, see *supra*, ¶ 11 n.2, no one has challenged the sufficiency of plaintiff's allegations against VAG; the only question is whether those allegations, combined with other alleged facts specific to Manosh, also state a claim against Manosh.

¶ 17. The crucial issue here is whether plaintiff provided adequate notice that Manosh personally participated in the alleged wrongful acts. "Vermont has recognized that a corporate officer may be held liable for a tort in which the officer *personally participated* even though the corporation may also be held liable."

*Agency of Natural Res. v. Upper Valley Reg'l Landfill Corp.*, 167 Vt. 228, 243, 705 A.2d 1001, 1010 (1997) (emphasis added). In *Upper Valley Landfill*, we cited with approval a case holding that a corporate officer can be held personally liable for actions in which he was "actively involved." *Id.* (citing *United States v. Conservation Chem. Co. of Ill.*, 733 F. Supp. 1215, 1221 (N.D. Ind. 1989)). One of the clearest statements on liability for corporate officers comes from the United States Court of Appeals for the Tenth Circuit:

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or *active participation or cooperation in*, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

*Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-09 (10th Cir. 1958) (emphasis added); see also 3A J. Berger et al., Fletcher Cyclopedia of the Law of Private Corporations § 1234.25, at 343 (2002) ("The personal liability of a corporate officer requires the officer's active participation in the liability-creating conduct, by having directed, ordered, ratified, approved, consented or sanctioned the conduct."). We made a similar statement in *Parker v. Cone*, 104 Vt. 421, 160 A. 246 (1932), where we relied upon agency law to hold that a corporate officer is "not personally liable for torts committed by [an employee] while carrying out his instructions unless he specifically directed them to be done or participated or cooperated therein." *Id.* at 425, 160 A. at 248.

¶ 18. Here, although Manosh claims that plaintiff alleges only that Manosh is liable because of his status as president and CEO of VAG — an allegation that would not in itself be sufficient grounds for stating a claim of personal liability against Manosh, see *Lobato*, 261 F.2d at 408-09 — the second amended complaint

in fact alleges much more than mere guilt by association. The second amended complaint alleges that Manosh has "ma[d]e all decisions regarding what is left of VAG operations," including decisions regarding "maintenance and control of erosion from tailing piles located on VAG's asbestos mine property." This allegation was sufficient to put Manosh on notice of plaintiff's claim that Manosh "personally participated" in the alleged tortious actions — namely, by directing where the tailing piles would be placed and how they would be contained. As in *Colby*, "[t]aking these allegations and all reasonable inferences therefrom as true, plaintiff adequately pleaded a . . . claim." 2008 VT 20, ¶ 9.

¶ 19. We are not persuaded by Manosh's argument that we should not allow personal liability here since to do so would eviscerate the corporate veil and leave corporate officers personally liable merely for discharging their corporate duties. Other courts have stated that the rule regarding personal liability of corporate officers "does not depend on the same grounds as 'piercing the corporate veil.'" *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983); see generally 2 F. O'Neal & R. Thompson, Close Corporations and LLCs: Law and Practice § 8:22, at 8-107 (rev. 3d ed. 2008) (explaining that a corporate officer's personal liability for allegedly tortious actions "derives not from corporations statutes, but from the common law and it does not require piercing the corporate veil"). As for Manosh's related argument that plaintiff cannot state a claim based on Manosh doing nothing more than personally participating in corporate decision making within the scope of his duties, we disagree. While it is true that a corporate officer has no liability merely by reason of his office,

> [c]orporate officers are liable for their torts, although committed when acting officially, even though the acts were performed for the benefit of the corporation . . . [when the plaintiff shows] some form of participation by the officer in the tort, or at least show[s] that the officer directed, controlled, approved, or ratified the decision which led to the plaintiff's injury.

3A Fletcher, *supra*, § 1135, at 54 (Supp. 2008). Manosh's argument assumes that a corporate officer's corporate acts are always mutually exclusive from the officer's personal acts. Thus, according to Manosh, any allegedly tortious action that is attributable to the corporation cannot also be attributed to a corporate officer. But

that cannot be true. See, e.g., *Adel v. Greensprings of Vt., Inc.*, 363 F. Supp. 2d 692, 700 (D. Vt. 2005) (noting that under Vermont law corporate officers "cannot avoid liability simply because they were acting within their capacities as officers"). As we stated in *Upper Valley Landfill*, corporate officers can be held personally liable "even though the corporation may also be held liable." 167 Vt. at 243, 705 A.2d at 1010. Thus, there are some actions for which *both* the corporation and the corporate officer can be held liable — namely, those actions in which the corporate officer "personally participated," as is alleged here. *Id.*

¶ 20. Because we hold that plaintiff's second amended complaint survives defendant's motion to dismiss, we need not address the trial court's subsequent ruling denying plaintiff's third amended complaint and denying plaintiff's motion to reconsider. On remand, plaintiff can proceed with his lawsuit based upon the second amended complaint.

*Reversed and remanded; plaintiff's motion to allow the second amended complaint is granted, and defendant's motion to dismiss is denied.*