Dernier v. Mortg. Network, Inc., No. 144-3-11 Wrcv (DiMauro, J., June 12, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Windsor County**                                    **Docket No. 144-3-11 Wrcv**

**Peter Dernier and Nicole Dernier**
        **Plaintiffs**

**v.**

**Mortgage Network, Inc., Mortgage Electronic**
**Registration Systems, Inc., and U.S. Bank Nat'l Ass'n.**
**as Trustee For CSMC Mortgage-Backed**
**Pass-Through Certificates, Series 2006-3.**
        **Defendants**

## Decision on Plaintiff's Motion to Allow Second Amendment to Complaint

Plaintiffs Peter and Nicole Dernier are homeowners who have fallen behind on their mortgage payments. Instead of awaiting foreclosure, however, plaintiffs have filed the present lawsuit alleging that their mortgage has become unenforceable as the result of certain deficiencies in the process by which their mortgage was securitized. Plaintiffs accordingly seek a discharge of their mortgage plus damages under federal and state laws. At issue is whether plaintiffs have stated any claims upon which relief can be granted in their second amended complaint. See *Prive v. Vermont Asbestos Group*, 2010 VT 2, ¶¶ 12–13, 187 Vt. 280 (explaining that when, as here, the plaintiff has filed an amended complaint in response to a motion to dismiss and the defendant opposes the amendment under Rule 15, the proper test is whether the amended complaint states any claims upon which relief can be granted).

The following allegations are taken as true from the second amended complaint. Plaintiffs took out a mortgage in 2005 and their note and mortgage deed were immediately launched into the secondary mortgage market. The note was endorsed in blank and negotiated as bearer paper to several different successive entities before landing in a trust administered by defendant U.S. Bank National Association. The mortgage was later assigned into the trust as well. Plaintiffs have scrutinized the terms of the pooling-and-servicing agreement that governs the operation of the trust and have concluded that the transfer of their note and mortgage into the trust did not comply with the terms of the PSA. In particular, plaintiffs contend that the note and mortgage were transferred into the trust too late (i.e., after the closing date of the trust) and that the note and mortgage deed lacked specific endorsements and chains of title as required by the PSA.

Plaintiffs' complaint is part of a rising national tide of preemptive lawsuits filed by defaulted homeowners who seek a discharge of their mortgage for reasons related to the allegedly-improper securitization of their mortgage. In many of the cases, as here, the homeowners have asserted claims for declaratory relief and consumer fraud based on allegations

that the transfer of their note and mortgage into a securitized trust did not comply with the terms of the pooling-and-servicing agreements that govern those trusts. And in nearly all of the cases to have produced reported opinions so far, the federal district courts have dismissed the complaints for failure to state a claim upon which relief can be granted. All of the following courts have concluded that homeowners are not entitled to any remedy based on allegations of noncompliance with pooling-and-servicing agreements either because the homeowners were not parties to (or intended third-party beneficiaries of) the PSAs or because violations of PSAs are simply not relevant to the enforceability of the note and mortgage as against the homeowner: *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 2012 WL 1657531 at *6 (D.Minn. May 11, 2012); *Bank of N.Y. Mellon v. Sakala*, 2012 WL 1424665 at *5 (D.Haw. Apr. 24, 2012); *Deerinck v. Heritage Plaza Mortg., Inc.*, 2012 WL 1085520 at *5–*6 (E.D. Cal. Mar. 30, 2012); *Junger v. Bank of America, N.A.*, 2012 WL 603262 at *3 (C.D. Cal. Feb. 24, 2012); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787 at *8 (D.Haw. Nov. 30, 2011); *Juarez v. U.S. Bank Nat'l Ass'n*, 2011 WL 5330465 at *4 (D. Mass. Nov. 4, 2011); *Long v. One West Bank, FSB*, 2011 WL 3796887 at *4 (N.D. Ill. Aug. 24, 2011); *Bascos v. Federal Home Loan Mortg. Corp.*, 2011 WL 3157063 at *6 (C.D. Cal. July 22, 2011); *Anderson v. Countrywide Home Loans*, 2011 WL 1627945 at *4–5 (D.Minn. Apr. 8, 2011); *Rodenhurst v. Bank of America*, 773 F.Supp.2d 886, 898–99 (D. Haw. 2011). Following these cases, this court is persuaded that alleged noncompliance with the terms of a PSA is not relevant to the enforceability of a note or mortgage as against the mortgagor. If there are problems with the securitization of a particular mortgage-backed security, it is the investors, rather than the mortgagors, who are the injured parties. *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324–25 (BAP 1st Cir. 2011).

Plaintiffs rely upon a small handful of cases from the California federal district courts wherein loan-securitization claims have been permitted to survive Rule 12(b)(6), e.g., *Johnson v. HSBC Bank USA*, 2012 WL 928433 (S.D. Cal. Mar. 19, 2012). It appears, however, that those cases reflect a minority position even within the California federal district courts, and they are certainly in the minority when compared to the national trend described above. Moreover, this court finds the reasoning of the majority rule to be more persuasive and more consistent with the Vermont Supreme Court's recent admonition that courts should be wary of arguments designed to reward mortgagors with a free home. *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶¶ 21–23. It is simply not equitable, nor a particularly-good solution to the national foreclosure crisis, to start handing out free homes as a remedy for securitization problems.

Plaintiffs have alleged other irregularities in the note and mortgage that supposedly prevent U.S. Bank from proving its status as a holder of the note or from proving that it has a valid assignment of the mortgage. At this stage, the allegations are premature because the holder of a note need not prove its status until such time as it seeks enforcement of the instrument. *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶ 13; *Kimball*, 2011 VT 81, ¶ 14. And even if the alleged defects were found during the foreclosure action, they would not entitle the homeowners to a complete discharge of their mortgage but rather would result in the "ephemeral victory" of a dismissal of the foreclosure action without prejudice. *Kimball*, 2011 VT 81, ¶¶ 21–23. As such, plaintiffs have failed to identify a basis upon which the declaratory relief requested in Count I can be granted.

2

Plaintiffs have alleged in Count II that U.S. Bank committed consumer fraud by claiming a "perfected ownership" interest in the note and mortgage, but plaintiffs have not explained how such a statement could have been material or deceptive as it pertained to them. And, as noted above, similar claims have been dismissed in many federal cases on the ground that homeowners cannot state a claim for consumer fraud arising out of alleged violations of pooling-and-servicing agreements to which the homeowners are not parties, e.g., *Sakala*, 2012 WL 1424665 at \*7; *Bascos*, 2011 WL 3157063 at \*6–7. For all of the foregoing reasons, therefore, the court denies plaintiff's motion to allow the second amended complaint, and grants defendants' motions to dismiss.

## ORDER

Defendant U.S. Bank National Association's Motion to Dismiss (MPR #4), filed Oct. 3, 2011, is ***granted***. Plaintiff's Motion to Allow Second Amended Complaint (MPR #6), filed Oct. 20, 2011, is ***denied***. Defendant Mortgage Electronic Registration Systems' Motion to Dismiss (MPR #8), filed Apr. 12, 2012, is ***granted***.

Dated at Woodstock, Vermont this \_\_\_\_ day of June, 2012.

_____
Theresa S. DiMauro
Superior Court Judge