VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org



| Blue Flame Gas Co. Inc. Site Plan & Conditional Use Application | Docket No. 20-ENV-00011 |
| --- | --- |

## Decision on Motion

Applicant-appellant Blue Flame Gas Co. Inc ("Blue Flame") appeals from a Town of Landgrove Zoning Board of Adjustment (ZBA) decision denying its application for conditional use and site plan approval for a proposed propane storage and distribution facility.  Presently before the Court is Blue Flame's motion to amend its Statement of Questions.  Interested party Michael Toole filed an objection, as did the Town of Landgrove following the Court's request for supplemental briefing.

### Background

We recite the following facts and procedural history purely to provide context for the present motion.  Blue Flame seeks the necessary municipal approvals to install a 30,000-gallon propane tank and to construct an accompanying building, variously referred to as a business and/or retail office, on a parcel of land in the town of Landgrove.  At the time of Blue Flame's submission of its initial application to the Town's zoning administrator in March 2020, the property was owned by other persons, but Blue Flame subsequently purchased the property.  Blue Flame labelled its initial application as one for a permitted use, however the zoning administrator informed them that the above-ground fuel tank they proposed was "Bulk Fuel Storage," a defined term in the Bylaws, and, as such, an industrial use.  As industrial uses required conditional use approval in the Commercial District, the zoning administrator advised Blue Flame that the application required conditional use and site plan approval by the ZBA and requested additional information to complete the application. Blue Flame provided the additional information and the ZBA held a hearing noticed as conditional use and site plan review on June 18, 2020.  At that meeting, several neighbors presented objections to the proposed project.  The ZBA recessed the hearing given the high level of interest and what it identified as deficiencies in the information provided.  Ahead of the reconvened hearing, Blue Flame

submitted a revised application and narrative. Notably, it proposed to bury the propane tank, which it claimed would alleviate one major source of the neighbors' concerns. It did not, at the time, argue that this revision changed the application to one for a permitted use or that conditional use approval was otherwise unnecessary.

The ZBA held the reconvened hearing on July 23, 2020, where the revised project was discussed and input from many of the same interested parties received. The hearing was adjourned and the ZBA subsequently denied the application in a written decision dated September 2, 2020. In its legal conclusions, the ZBA determined that the application required conditional use approval, both because bulk fuel storage was an industrial use and because the project proposed a "multi-use building," which automatically subjected the application to conditional use review. It concluded the project did not meet the general conditional use standards, specifically because of its impact on the character of the adjacent area and on traffic. The ZBA denied the application on these grounds, but noted that if it were to proceed to the specific conditional use standards, "it would impose conditions to address, among other concerns, Performance Standards under Bylaws §§ 320, 321, or 322; Landscaping under Bylaws § 330; or Commercial District Development under Bylaws §§ 420—425." The ZBA also disapproved of the site plan, finding it did not maximize the safety of vehicular circulation or adequately screen buildings and service areas.

Blue Flame subsequently filed this appeal in October 2020. In its original Statement of Questions, filed October 22, 2020, it posed two questions and nine sub-questions. Essentially, the initial Statement of Questions asked whether the project should be granted conditional use and site plan approval and challenged the specific reasons the ZBA had given for denying those approvals. The parties subsequently began the discovery process, which was extended by court order. Blue Flame filed the present motion on August 25, 2021, two weeks after the Court issued its most recent amended discovery scheduling order. By the terms of that order, written discovery had long since closed, and the parties had one month before any deposition of Blue Flame expert witnesses needed to occur. At the time, only one week remained before the parties other than Blue Flame needed to disclose all their expert witnesses. See "Second Amended Discovery/Alternate Dispute Resolution Stipulation and Order," Aug. 10, 2021.

The proposed amended Statement of Questions contains 12 questions and no sub-questions. The new questions can be broken into three categories. Questions 1-6 all essentially ask whether the proposed development should be reviewed as a permitted use. They raise issues not presented in the original statement of questions. Questions 7 and 9 concern the appropriate standard by which to

judge adverse impacts. Question 7 expounds on question 1(a) in the original Statement of Questions, while Question 9 is brand new. Finally, 8, 10, 11, and 12 amend the remaining questions in the original Statement of Questions (1(b)-2(c)). They essentially change these from questions about the particular conditional use criteria, performance standards, and site plan criteria under which the ZBA denied the project to questions of whether the project meets all the applicable conditional use and site plan approval standards.

## Legal Standard

Like a complaint in a civil case, appellants to the Environmental Division may amend their Statement of Questions once as a matter of right within 21 days of the initial filing thereof. V.R.C.P. 15(a);[1] In re Killington Mountain House, LLC NOV, Nos. 138-12-18 and 30-2-19 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Nov. 17, 2020) (Durkin, J.). Thereafter, we "generally take a liberal view in granting a motion to amend a Statement of Questions." Laberge Shooting Range, No. 96-8-16 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Jan. 4, 2017) (Walsh, J.) (internal quotation marks omitted) (citing Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1). We consider "whether there has been undue delay or bad faith by the moving party, whether the amendment will prejudice other parties, and whether the amendment is futile." Id. at 3. There is no fixed length of time that constitutes undue delay, but we are more receptive when less time has passed and above all when there are good reasons for the delay, such as discovery of new information. In re Burns 12 Weston Street NOV, No. 75-7-18 Vtec, slip op. at 2-3 (Vt. Super. Ct. Envtl. Div. Aug. 8, 2019) (Durkin, J.) (merits decision appealed on other grounds). As to prejudice, we look at whether the delay had or is likely to have any negative effect on the non-moving party's ability to litigate their position. *Cf.* In re Northeast Materials Group, LLC., No. 35-3-13 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. July 2, 2013) (Walsh, J.). And proposed questions are futile if they state a claim upon which relief could not be granted or which lies outside our court's limited subject matter jurisdiction. Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Aug. 31, 2016) (Durkin, J.) (*citing* Prive v. Vt. Asbestos Grp., 2010 VT 2, ¶ 13, 187 Vt. 280) ("[T]he Court may deny motions to amend if the amendment would be 'futile,' i.e., if the added claims would not survive a motion to dismiss."); In re Zlotoff Foundation Inc. NOV (2), No. 69-6-19 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Sept. 24, 2020) (Durkin, J.) (denying leave to add questions raising issues outside the scope of our Court's jurisdiction).

## Analysis

---

[1] Note, V.R.C.P. refers also to the option of amending once as a matter of right before a responsive pleading, if one is due; however, no responsive pleading is allowed to the Statement of Questions, *see* V.R.E.C.P. 5(f).

The time has passed to amend the Statement of Questions once as a matter of right. We therefore consider the factors discussed above: undue delay, bad faith, prejudice, and futility. With regard to the first two factors, the appellant let ten months pass between filing its initial statement of questions and moving to amend. This is a longer amount of time than some instances in which the Court has denied a motion to amend. *See* In re Korrow Real Estate, LLC Act 250 Permit Amendment Application, No. 29-3-16 Vtec, slip op. at 3-4 (Vt. Super. Ct. Envtl. Div. Feb. 15, 2017) (Durkin, J.). However, what matters most is not the length of time but the reasons for the delay. Burns 12 Weston St. NOV, No. 75-7-18 Vtec at 3 (Aug. 8, 2019). The appellant offered two explanations for the delay in its Reply in support of the motion to amend: new co-counsel entering an appearance and the "timing of discovery." Reply at 2. By this latter "reason," we understand Blue Flame simply to be arguing that discovery had not closed when it filed the present motion. Neither of these are good reasons for the delay, and this factor counsels against granting the motion. However, we must consider the remaining factors of prejudice and futility, whose application differs depending on the questions. For efficiency, we consider the questions in the groups identified earlier: Questions 1-6, Questions 7 & 9, and Questions 8 & 10-12.

### Questions 1-6

We begin with an analysis of the futility of the proposed questions, as this could be determinative. Proposed questions may be futile if they would not survive a motion to dismiss for failure to state a claim or for a lack of subject matter jurisdiction. Prive v. Vt. Asbestos Grp., 2010 VT 2, ¶ 13; In re Zlotoff Foundation Inc. NOV (2), No. 69-6-19 Vtec at 3 (Sept. 24, 2020). As discussed earlier, Blue Flame's application to the ZBA for conditional use approval was considered across two hearings. Between those two hearings, Blue Flame made a significant change to its proposal, by offering to bury the large propane tank. Nevertheless, the ZBA denied conditional use and site plan approval. The thrust of Questions 1-6, none of which appeared in the initial Statement of Questions, is whether the application, as revised, required conditional use approval at all, or whether it rather should have been reviewed as a permitted use. One key issue the Questions raise is whether by burying the tank, Blue Flame changed the use so that it no longer met the definition of bulk fuel storage. If it did, Blue Flame argues the tank should be treated as an accessory use to main use of property—a retail store or, in the alternative, business office, both permitted uses. The remaining issue they raise is whether a multi-use building was proposed, which would require conditional use review regardless.

The proposed questions strike to the heart of the scope of the Environmental Court's de novo review power. Essentially, they ask the Court to convert the application from one for conditional use review to one for a permitted use based on changes to the application that occurred before the ZBA. We considered multiple possibilities in reviewing the motion, including whether the Questions, answered one way, would require a remand to the ZBA, or whether they raised issues even the ZBA could not consider on remand. If the latter were true, the questions would almost certainly be futile, while in the former case, the analysis is more complicated. We asked for additional briefing and thank the parties for their illuminating arguments. We now decide, for the reasons stated below, that such questions are not futile.

To begin, we are confronted by conflicting persuasive authority on the question of whether the Court may consider an application considered below under conditional use criteria as one for a permitted use. In Werner Conditional Use, we denied an applicant's motion to add a question asking whether structures on her property did not require a zoning permit, where applicant's appeal was of the denial of her application for a retroactive conditional use permit for those structures. We reasoned that the question "essentially argues that no conditional use permit is required for Appellant's structures…[however] the only issue before the Court is whether Appellant's structures comply with the conditional use criteria. If appellant wishes to challenge the necessity of conditional use review, she must wait until the Town makes some determination that conditional use approval is required, and appeal that determination to this Court." Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Aug. 31, 2016). In the same decision, we granted a motion to dismiss a separate question from the applicant that argued the structures were included within her earlier conditional use permit, for similar reasons. Id. at 5.

In contrast, in Southern Vermont Beagle Club, we confronted neighbors' challenge to the granting of a conditional use permit for a private club. In one question, the neighbors asked whether the application met the conditional use criteria in the Bylaws. However, we determined that the application described a permitted use and did not need to undergo conditional use review. We therefore dismissed the question. In re Southern Vermont Beagle Club, No. 142-9—11 Vtec, slip op. at 8-9 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.). Similarly, in an unpublished Supreme Court decision, the Court reversed an Environmental Court decision affirming a municipal panel's denial of a conditional use permit. The Court determined that the application actually described a permitted use in the relevant district and remanded for entry of judgment in favor of the applicant.

In Re Sisters and Bros. Grp. No. 2004-495, slip op. at 2-3 (Vt. May 2005) (unpublished mem.), available at https://www.vermontjudiciary.org/sites/default/files/documents/eo04-495.pdf.

None of this authority is controlling. To the extent that it is relevant, the present situation can be distinguished from the facts in Werner, because in Werner the applicant was attempting to argue that the structures were exempt from a zoning permit entirely, while here the applicant is seeking to argue that their project is a permitted use. Further, in Werner the applicant's argument did not arise in response to a change to the application made before the municipal panel. Yet we acknowledge the above decisions are in tension with one another. To resolve this tension, we have returned to first principles, namely the scope of de novo review and when remand is appropriate or required.

We are, of course, a court of limited jurisdiction. While, in a de novo hearing, we are directed to consider the pending application "as though no action whatever had [previously] been held," Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989), we are limited "to consideration of the matters properly warned as before the local board." In re Maple Tree Place, 156 Vt. 494, 500 (1991). Moreover, our review is limited to the issues presented by or intrinsic to the Statement of Questions. V.R.E.C.P. 5(f); Vill. of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993), In re Jolley Assocs. 2006 VT 132, ¶ 9. Our discretion to remand cases to municipal panels is codified by V.R.E.C.P. 5(j), but there are lower and upper bounds on that discretion. *See* In re Lathrop Ltd. Partnership I, 2015 VT 49, ¶ 103, 199 Vt. 19.

A line of cases illustrates how the scope of de novo review is interwoven with the issue of when remand is appropriate. These cases have sometimes but not always involved changes to the substance of an application made during an appeal. The seminal case is In re Torres, 154 Vt. 233 (1990), decided before the Environmental Court existed and when municipal zoning appeals were still taken to the local Superior Court. There, neighboring property owners appealed the DRB's decision to grant the applicant a zoning permit for what it determined was a permitted use. In response to the Superior Court's holding that proposed use did not qualify as a permitted use, the applicant asked the court to treat the application as one for a conditional use, and the court acceded. Notably, the applicant had not changed the substance of the proposed project before the court. However, the Supreme Court reversed, holding that the Superior Court could not convert an application for a permitted use to one for a conditional use. The Supreme Court emphasized the infirmities in public participation such a switch would engender, namely that notice of an application for a permitted use approval could not serve to properly notice a hearing on a conditional use application. Id. at 236-37. Because it could not proceed to this review, the Superior Court was required to remand to the DRB.

In subsequent cases, the Court affirmed that while the notice issue is sufficient to require a remand, it is not necessary. Rather an appeals court (including the Environmental Division) must also remand an application when it reaches a stage or type of review that the zoning body below could not have reached in the decision appealed from, but that is necessary to achieve a final resolution on the merits. A notable case is Simendinger v. City of Barre, 171 Vt. 648 (2001). In that case, the town bylaws established a three-step process for conditional use review: first, the planning commission had to approve the project, based on a finding that it met the character of the area in which it was sited and filled a need, then the ZBA had to review the project under general and specific conditional use criteria, and finally, the planning commission had to issue site plan approval. The application failed at the first step: The planning commission ruled the applicant had not demonstrated a need for the project. The Environmental Court reversed the planning commission and proceeded to consider the project under conditional use criteria. The Supreme Court ruled the court could not do this, and instead was required to remand to the ZBA to conduct this review. It stated, "the environmental court exceeded its authority in purporting to consider issues relating to the conditional use applications that the board—under the ordinance—could not, and did not, address," and "proper notice may be a necessary, but it is not a sufficient, precondition to the court's exercise of authority." Id. at 652, 653. Similarly, our court cannot conduct site plan review in the first instance that the appropriate municipal panel did not first conduct below, Midway Charters Ventures, LLC, No. 44-3-19 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Aug. 29, 2019) (Durkin, J.), or convert an appeal from a variance denial into an application for a zoning permit. LeGrand & Scata Variance Application, No. 110-8-14 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2015) (Durkin, J.).

All of the above cases involved proposed changes to the *type* of municipal zoning action a party was seeking. Other related cases have considered changes to the substance of a project under consideration. As the Supreme Court has recognized, applicants frequently seek to change substantive aspects of projects while on appeal to the Environmental Division, typically in response to the concerns of those opposing the application. Efficiency of justice requires that our Court be able to respond to minor changes, lest "site-plan review…become a procedural ping-pong match." In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103. However, the Court affirmed that substantial changes to the substance of an application would require a remand to the municipal panel under Torres. Id. To distinguish substantial from minor changes, the Court has considered chiefly whether the changes "implicate additional analyses the DRB did not have occasion to consider below and… [if] they might have invoked comment from interested persons who had no objection to the

original plan." In re Wright & Boester Conditional Use, 2021 VT 80, ¶25; see also Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 109.

Again, Blue Flame's proposed questions chiefly ask us to change the type of permit review, but the change from conditional to permitted use review is much more subtle than the other way around, or than the difference between either and site plan review. Blue Flame's proposed change in review does stem from a change to the application, but one made while the application was pending before the ZBA. With these observations in mind, we consider the issues of notice and of whether the ZBA could have done what Blue Flame is asking us to do, following the caselaw outlined above.

We agree with Blue Flame that the notice concerns the Supreme Court expressed about going from an application for a permitted use to one for conditional use are mitigated generally when going in the opposite direction as well as based on the particular facts of this case developed so far. Generally, conditional use review encompasses all factors and criteria that permitted use review would, as well as general and specific conditional use standards. Interested persons considering whether to testify or preparing only to testify as to permitted use criteria would be unfairly surprised if not warned that there would be an opportunity to comment on conditional use factors. In contrast, those prepared to testify at a conditional use hearing would at worst have part of their prepared testimony made irrelevant by conversion to a hearing on a permitted use. Further, the particular facts of the Blue Flame application also demonstrate less of a notice issue. The ZBA held two noticed public hearings, and at the second considered Blue Flame's revised application. Interested parties had ample opportunity to comment on the substance of the entire application, including the proposal to bury the tank—that substance has not been changed before us.

Yet, while the notice concern is mitigated, it is not eliminated entirely. It is at least plausible that potentially interested parties who did not attend a conditional use review hearing might have attended a permitted use review (or, given the bylaws, an appeal to the ZBA from a decision of the zoning administrator on such)—if, for example, they felt that their concerns would be well protected by a ZBA undertaking conditional use review, but not during the far less searching permitted use review. Additionally, there may have been a notice problem in communicating the changes to the interested public. While the applicant submitted its revised application two weeks ahead of the reconvened hearing, it is not clear based on the evidence submitted so far whether those changes were included in any notice of the reconvened hearing. If they were not, neighbors who may not have objected to an above-ground tank but might have had concerns about a below-ground tank may not

have been properly warned. Nevertheless, we do not believe these concerns are sufficient to conclude that permitted use review would have been improper.

Next we confront the issue of whether the ZBA could have reviewed the application as one for a permitted use consistent with the Bylaws and the enabling statute. Unlike in Simendinger, there is no clear missing step that would have served as a barrier to the ZBA doing so. Under the Bylaws, the zoning administrator must either grant, deny, or refer a complete zoning application to the ZBA within 30 days of accepting it as complete. Bylaws § 132.2. The zoning administrator must refer the application to the ZBA if it determines the project requires conditional use approval. § 148. That determination may itself be appealed to the ZBA. §§ 134, 141; see also 24 V.S.A § 4460(e). Once the ZBA receives the application, it has the authority to grant conditional use approval and site plan approval, both required for a zoning permit. §§ 148, 153; 132.1(f). The Bylaws are silent, however, on whether the ZBA may determine that an application for conditional use review nevertheless describes a permitted use and should be granted a permit on that basis.

It is true that the Bylaws do not create any "original jurisdiction" for the ZBA over applications for permitted use. The Town argues that the powers the Bylaws create in the ZBA (chiefly to review conditional use applications and associated site plans and to consider appeals from decisions of the zoning administrator, including the determination that conditional use approval is required) are exclusive. They argue that the ZBA therefore could not have converted the application to one for a permitted use, once the initial determination that conditional use approval was required became final. To have the revised project considered as a permitted use, they continue, Blue Flame would have needed to withdraw its application before the ZBA and re-submit its revised plan to the zoning administrator.

We conclude that neither the bylaws nor the enabling statutes require such a cramped interpretation of the powers of the ZBA or of our own authority on review. As we have stated in the context of considering evidence not presented to the appropriate municipal panel, "the land use permitting process must allow for some flexibility." In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 9 (Vt. Envtl. Ct. July 25, 2008). Such a need for flexibility, balanced with the interest of finality, is also recognized most notably through the Successive Application Doctrine, the Stowe Club Highlands Analysis, and Rule 34(E) governing amendments to Act 250 permits. In this instance, the Landgrove ZBA is charged with interpreting the town's zoning laws and making decisions involving complex analysis in conditional use review. It sits in review of decisions of the zoning administrator on simpler matters. By virtue of both the enabling statute and the Bylaws, it has a wider

scope of authority than the zoning administrator. Had the ZBA determined that a (revised) conditional use application before it described a permitted use, we do not agree that it would have been required to direct the applicant to withdraw and resubmit its application—this would have been a waste of time and resources. Instead, in that scenario, the ZBA could have directed the zoning administrator to grant the permit once other necessary reviews were taken.

One thing gives us pause in this interpretation: Section 153 of the Bylaws sets out distinct procedures for approval of site plans based on whether the use is permitted or conditional. In the former instance, the ordinance states that the Town Planning Commission "shall review and decide upon" the site plan application; however, in the case of a proposed conditional use, the ZBA reviews the site plan, as it did here. Based on Simendinger, this provision may ultimately require us, should we consider the project to describe a permitted use, to remand the application for site plan approval to the Planning Commission. However, that is not a bar to our considering Questions 1-6.

Lastly, the Town also argues that Questions 1-6 constitute an impermissible collateral attack under 24 V.S.A. § 4472(d) on the zoning administrator's determination that the application required conditional use approval, which applicant did not appeal at the time. We agree with Applicant that it significantly revised its application subsequent to the zoning administrator's determination, notably by burying the propane tank, which affected the basis of that determination. We also agree that these Questions therefore do not constitute an impermissible collateral attack. *Cf.* In re Costco Land Use Act 250 Permit Amendment, No. 20-3-20 Vtec, slip op. at 17 (Vt. Super. Ct. Envt'l. Div. Aug. 31, 2021) (Durkin, J.) (holding that an application to change a permit condition did not constitute an impermissible collateral attack on original decision where proposal was of a limited duration in response to external delays and proposal limited hours of operation, thereby partially alleviating the concerns behind the original condition).

Nor is any other party prejudiced by allowing these Questions to be added after the close of written discovery, but before any motions on summary judgment and before trial. While we note that Mr. Toole claimed he would be prejudiced by the addition of questions that may require him to "review [his] filings and to potentially amend the same," such an unspecific and unsupported statement does not convince us there is any prejudice. The question of how to initially categorize a proposed use for the purpose of determining the type of review it must undergo is not a fact-intensive one—it relies on an applicant's description of the project in their narrative and subsequent materials, as compared to the definitions of various uses contained the Bylaws. It is, therefore, largely a question of law, and not one discovery would be likely to affect. However, should either of the non-moving

parties put forward a specific and good-faith reason why they may wish to conduct further discovery in response to the addition of these Questions, we would consider such a request.

Questions 7 and 9

Proposed Question 7 asks,

If the Project is subject to Conditional Use review under § 148.1 of the Bylaws, must the Court apply the standard of 24 V.S.A. § 4414(3)(A) ("undue adverse effect") or that articulated by the Vermont Supreme Court in In re Miller, 170 Vt. 64, 69 (1999) and In re Walker, 156 Vt. 639, 639 (1991) (mem.) ("substantial and material adverse effect") to the Project instead of the General Condition Use standard of § 148.1 of the Bylaws ("[T]he proposed conditional use shall not affect…") because the latter standard is impermissibly restrictive and/or prohibitive?

This is a genuine clarification of Question 1(a) from the initial Statement of Questions, which simply asked whether the Landgrove Bylaws' standard was impermissibly restrictive, and if so, what standard should apply. With this amendment, applicants narrow their original question by providing two possible standards for the Court to consider as a replacement for the Bylaws' standard, should we agree that it is impermissibly restrictive. We see no prejudice to any non-moving party in such a revised Question. *See* Laberge Shooting Range, No. 96-8-16 Vtec at 5 (Jan. 4, 2017) ("This is a reason to allow the motion to amend—to narrow the scope of the appeal and focus the parties on the specific issues being appealed…"). Nor is this Question futile—it is within this Court's powers to interpret Bylaw provisions, including specifically those dealing with adverse impacts, in order for the Bylaws to be consistent with the enabling statute. *See* In Re Group Five Investments, 2014 VT 14, ¶ 15, 195 Vt. 625, *overr'd on other grounds by* In re Confluence Behav. Health, LLC, 2017 VT 112, 206 Vt. 302.

Proposed Question 9 similarly asks whether the Bylaws' general provision on performance standards, which requires a "minimal impact on neighboring properties," Bylaws § 320, is unduly restrictive, and proposes an alternate standard. While no equivalent question appeared in the initial Statement of Questions, we see no prejudice or futility in allowing Question 9 to be added either.

Questions 8, 10, 11, and 12

Proposed Question 8 replaces initial questions 1(b)-(c) regarding the particular conditional use criteria that the ZBA found the project did not meet with the broader question of whether the project satisfies all conditional use criteria. Proposed Question 10 replaces questions 1(d)-(f) regarding the particular performance standards that the ZBA said it would have conditioned a permit on meeting, had it not denied the application. Question 10 replaces these questions with the broader question of

-11-

whether the project meets all performance standards. Proposed Question 11 replaces question 2(d), which raised the single issue of the screening of storage areas applicable to Commercial District developments that the ZBA suggested the project did not comply with, with the broader question of whether the project meets all the Commercial District standards. Proposed Question 12 replaces Questions 2(a)-(c) regarding particular criteria of site plan approval that the ZBA found the project failed, with the broader question of whether the project satisfies all site plan approval criteria.

Such questions are not futile. The ZBA had occasion to consider all of the issues raised by the new Questions 8, 10, 11 and 12, since they are all germane to the application for conditional use and site plan approval the ZBA had before it. The ZBA chose instead to end its formal analysis at the two or three general conditional use standards and site plan approval criteria it found the project failed. It then noted the performance standards about which it had concerns and expressed in general terms the types of conditions it would place on a permit to address those concerns, had it not denied the application. However, this does not deprive the Court of jurisdiction over all the remaining analyses in a municipal de novo appeal. *See* In re John A. Russell Corp., 2003 VT 93, ¶ 29, 176 Vt. 520 ("[T]he ZBA's failure to make specific findings on certain criteria did not preclude the court from doing so."); In re Irish Const., No. 44-3-08 Vtec, slip op. at 7, 10 (Vt. Envtl. Ct. Apr. 06, 2009) (Durkin, J.) (stating that "we glean from the oft-cited Torres decision that our focus should be on what the municipal panel 'might' have done with a municipal land use application, implying that what the municipal panel actually did in response to the application cannot set limits on the legal issues raised in an appeal," although our analysis is restricted, of course, to "those issues that are germane to the application first heard by the appropriate municipal panel."). Wright and Boester does not change this rule. Instead, that decision makes clear that a municipal panel does "not have occasion to consider" an analysis when, based on the application before it, it rightfully concludes such an analysis is not implicated, while with a revised application, the analysis would have been implicated. Wright & Boester Conditional Use, 2021 VT 80, ¶¶ 25-26. In contrast, when the appropriate municipal panel can conduct an analysis but chooses not to because of denying the application for failing a separate criteria, that panel does "have occasion to consider" the analysis.

Nor are such Questions impermissibly broad. While a Statement of Questions is supposed to focus on those legal and factual determinations an appellant contests—usually the determinations of the municipal panel or district commission with which an appellant disagrees—here, Blue Flame appeals the complete denial of their permit below. In such situations, the expectation is that an applicant-appellant wishes the Court not only to overturn the narrow grounds for the denial but to

grant the permit.  When the application has not been significantly changed in form or in type, it is within the scope of our de novo review to do so.  The Town and Mr. Toole are not prejudiced by the addition of questions that the Court likely would have reached anyways, were we to disagree with the ZBA on the narrow grounds on which it denied the application.

### Conclusion

We are troubled by Blue Flame's long delay in moving to amend its initial Statement of Questions, for which it has not offered a good explanation.  However, we do not detect any futility or prejudice to the non-moving parties in allowing the requested amendments.  Given the strong public interest in the finality achieved by resolving this matter on the merits, *see* Prive, 2010 VT 2, ¶ 12 (quoting Colby v. Umbrella, Inc., 2008 VT 20, ¶ 3, 184 Vt. 1), we **GRANT** the motion and allow the proposed amendments to the Statement of Questions.

**SO ORDERED**.

Electronically signed on December 6, 2021, at Burlington, VT pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division