2013 VT 96

# Peter Dernier and Nicole Dernier v. Mortgage Network, Inc.; Mortgage Electronic Registration Systems, Inc. and U.S. Bank National Association

[87 A.3d 465]

No. 12-226

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed October 18, 2013

*Kimberly B. Cheney* of *Cheney Saudek & Grayck PC*, Montpelier, for Plaintiffs-Appellants.

*Andre D. Bouffard* of *Downs Rachlin Martin PLLC*, Burlington, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiffs Peter and Nicole Dernier appeal the dismissal for failure to state a claim, of their action for (1) a declaratory judgment that defendant U.S. Bank National Association cannot enforce the mortgage and promissory note for the debt associated with plaintiffs' purchase of their house based on irregularities and fraud in the transfer of both instruments, (2) a declaration that U.S. Bank has violated Vermont's Consumer Fraud Act (CFA) by asserting its right to enforce the mortgage and note, and (3) attorney's fees and costs under the CFA. They also appeal the trial court's failure to enter a default judgment against defendant Mortgage Electronic Registration Systems, Inc. (MERS). We affirm in part and reverse in part.

¶ 2. The following facts set out the basic events that led to the suit and the procedural posture of the case. The allegations as to the alleged irregularities and fraud related to the note and mortgage, and the specific claims in plaintiffs' complaint, will be explained in greater detail thereafter.

¶ 3. Plaintiffs purchased a house in Weston, Vermont in 2005. Kittredge Mortgage Corporation, a Vermont corporation, loaned plaintiffs $242,250 for the purchase, and Peter Dernier executed a promissory note in favor of Kittredge in that amount on October 7, 2005. Plaintiffs also executed a mortgage in favor of Kittredge on the same date. Plaintiffs allege no irregularities with the purchase of the house or the execution of the note or mortgage.

¶ 4. After that smooth beginning, things began to get murky. The note and the mortgage were immediately transferred, and although their paths were slightly different, by the time of this suit both had entered the secondary mortgage market and had landed in a trust administered by U.S. Bank.

¶ 5. Plaintiffs fell behind on their mortgage, and in March 2011 brought suit against two parties: Mortgage Network, Inc. (MNI), which is in the chain of title for both the note and the mortgage, and MERS, which is in the chain of title for the mortgage as a "nominee" for MNI. Plaintiffs sought a declaratory judgment that the mortgage was void, asserting that (1) MERS, as a nominee, never had any beneficial interest in the mortgage, (2) MNI had assigned its interest in both instruments to others without notifying plaintiffs, and (3) no party with the right to foreclose the mortgage had recorded its interest. MNI responded by letter on April 25, 2011 that plaintiffs had named MNI as a party in error, because MNI did "not own the right to the mortgage in question." MERS did not respond. Around this time, plaintiffs received a letter in which U.S. Bank, through its attorney, represented that it possessed the original promissory note and mortgage and that it had the right to institute foreclosure proceedings on the property.

¶ 6. In June 2011, plaintiffs moved for a default judgment against MNI and MERS. A few days later, plaintiffs moved to amend their complaint to join U.S. Bank as a defendant, alleging for the first time — in general terms — that the assignment to U.S. Bank was invalid and U.S. Bank's assertion of any interest was an unfair and deceptive practice in violation of the CFA. The complaint as to U.S. Bank called for a declaratory judgment that U.S. Bank had no right to foreclose the mortgage or enforce the note, that U.S. Bank had violated the CFA, and that plaintiffs were entitled to attorney's fees.

¶ 7. The trial court granted plaintiffs' motion to join U.S. Bank as a party, but denied the motion for default judgment. In denying

plaintiffs' motion, the trial court noted that, because the case was a declaratory judgment action "in which relief granted as against one defendant may have significant effects on the rights of others," default judgment was not appropriate "until all parties have been added, served, and have had time to file answers." It added, however, that plaintiffs were free to renew their motion for default judgment after those conditions were satisfied.

¶ 8. U.S. Bank moved to dismiss the case, and plaintiffs responded by filing an amended complaint, where they explained for the first time their allegations of fraud and noncompliance with the terms of the pooling and servicing agreement (PSA) governing the pool into which the mortgage had been assigned. U.S. Bank again moved to dismiss, noting the heightened pleading requirement for allegations of fraud under V.R.C.P. 9(b). Plaintiffs moved to file a second amended complaint, in which the allegations of fraud were laid out in detail and accompanied by exhibits. U.S. Bank opposed the filing of the second amended complaint and again moved to dismiss. The trial court denied plaintiffs' motion to amend and dismissed plaintiffs' case for failure to state a claim. See *Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶¶ 12-13, 187 Vt. 280, 992 A.2d 1035 (explaining that when a plaintiff files an amended complaint in response to a motion to dismiss, the correct test is whether the amended complaint would survive a motion to dismiss). Plaintiffs appealed.

¶ 9. While we are technically reviewing the denial of a motion to amend a complaint, the trial court's decision was based on the content of the proposed second amendment to the complaint. Thus, we treat the case as if plaintiffs' complaint were amended as they proposed and the superior court dismissed it for failure to state a claim.

¶ 10. We also note that, although plaintiffs continue to name MNI and MERS as defendants along with U.S. Bank, plaintiffs' amended complaint addresses only claims against U.S. Bank and prays for relief only against U.S. Bank. Accordingly, we treat U.S. Bank as the sole defendant here unless we state otherwise.

¶ 11. In their complaint, plaintiffs allege irregularities and fraud related to the transfer both of the note and the mortgage. For each item, the note and the mortgage, we will first describe the state of the documentation as found in the exhibits attached to the complaint and then summarize the allegations made by plaintiffs. As this case comes to us on a motion to dismiss, we must take the

allegations in plaintiffs' complaint as true, a point we stress below — but examining the documents allows us to understand better plaintiffs' claims.

¶ 12. We begin with the note, and with what appears on the note itself. In what was presumably the first step, although there are no dates on the assignments, Kittredge assigned the note to MNI, a Massachusetts corporation, through a stamp that was signed by Yvonne Pickard. The next transfer was effected by a stamp that reads: "Pay to the order of ** Without Recourse." Under that statement is the name "Mortgage Network, Inc.," followed by "By: Chad M. Goodwin, Pipeline Manager." Above this stamp is typed: "** US Bank National Association, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-3." What seems to be a signature is placed over Chad Goodwin's name.

¶ 13. The CSMC trust is governed by a PSA, which plaintiffs submitted as an exhibit with their second amended complaint. According to the PSA, defendant is the "Trustee," and Wells Fargo Bank N.A. is the "Servicer." While that accords with the assignment on the mortgage, other elements of the PSA are confusing as they relate to plaintiffs' note. First, according to the PSA, the trust is composed of assets for which DLJ Mortgage Capital, Inc. is the "seller" and Credit Suisse First Boston Mortgage Securities Corp. is the "depositor." As there is no indication that plaintiffs' note was owned by Credit Suisse or DLJ Mortgage Capital, this is certainly perplexing, for the PSA suggests that it is composed entirely of instruments acquired by DLJ Mortgage Capital and transferred to Credit Suisse, and states that an "original Mortgage Note *bearing all intervening endorsements*" must be delivered to the custodian of the trust. (Emphasis added.) Another strange element of the PSA is that the trust has a "closing date" of March 30, 2006, and gives 90 days from that date for the trust to obtain any missing papers, but the note has no indication of when the transfer was made.

¶ 14. Seizing on these facts, plaintiffs in their complaint assert various conflicting fact patterns surrounding the transfer of the note, in an effort to show that defendant does not have the right to enforce it. First, they assert that DLJ Mortgage Capital acquired the note from MNI and transferred it to Credit Suisse — although there is no evidence of this on the note, this assertion is presumably based on the proposition that because the trust is

composed of instruments from DLJ Mortgage Capital and Credit Suisse it must have passed through those entities to become part of the trust. Plaintiffs draw from this the conclusion that the purported transfer to defendant from MNI was invalid, as defendant had given up the note to DLJ Mortgage Capital. Second, plaintiffs assert that defendant acquired the note after the closing date of March 30, 2006, which they claim makes the transfer invalid and prevents the trust from owning the note. There is no stamp on the date of the transfer to defendant, but plaintiffs seem to presume that it occurred after June 30, 2006, while acknowledging that the date has not been precisely determined. Finally, plaintiffs assert that the initial stamp from Chad Goodwin was blank, but that defendant, "by its employees or agents, caused the purported signature of Goodwin to be affixed on the Note." They also state, in a different variation on that allegation, that defendant "knew the endorsement was fraudulent." The justification for these last two statements is that plaintiffs have somehow located Chad Goodwin's signature on a mortgage in Maine, which they submitted as an exhibit, noting that that signature looks very different from the signature on their note.

¶ 15. Moving on to the mortgage, the picture is no clearer. On October 7, 2005 — the very day the mortgage was executed by Peter Dernier to Kittredge — Kittredge assigned it to MERS, a Delaware corporation, as nominee for MNI. Plaintiffs allege no irregularity in this assignment, and it was recorded in the Weston land records on October 12, 2005. The next transfer for which there is documentation was on March 18, 2011, from MERS to defendant, again as trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Backed Pass-Through Certificates, Series 2006-3.

¶ 16. There are three things pertinent to plaintiffs' complaint to flag about this transfer. First, the text of the assignment says that MERS is acting as a nominee for Kittredge Mortgage Corporation.[1] Given the earlier transfer from Kittredge to MERS as nominee for MNI, this language appears to be clearly wrong. Second, the assignment is signed for MERS by "Michael Snively, Assistant Secretary." As evidenced by another document attached

---

[1] Plaintiffs also point out that the address given is in Danville, IL, where Kittredge does not do business, and identifies that as an indication of fraud. This results from a misreading of the sentence, which could equally well mean that the address is that of MERS.

to the complaint, Michael Snively is an employee of Wells Fargo — the servicer of the trust — not of MERS.[2] Finally, similar to the problem of the note discussed above, the date of the assignment to the trust was after the closing date.

¶ 17. Plaintiffs in their complaint assert that the assignment to defendant was invalid for all of these reasons, adding an allegation that the signature of the notary public avowing to the signature by Michael Snively was "forged."

¶ 18. After putting forward these allegations, plaintiffs explain in their complaint that they seek three forms of relief. First, they request a declaratory judgment that defendant has no right to enforce either the note or the mortgage, based on the violations of the PSA and the alleged fraud. Second, they request a declaration that defendant has violated the CFA by stating that it believes it has the right to enforce the mortgage and note. Finally, presumably based on the CFA claim, they request payment of their attorney's fees and costs.

¶ 19. Defendant opposed the motion to amend, essentially arguing that it was futile and would not survive a motion to dismiss. Its primary arguments were that plaintiffs lacked standing to make their claims. As to the alleged violations of the PSA, defendant argued that plaintiffs were neither parties to nor beneficiaries of the PSA, so they have no standing to enforce it. As to the alleged fraud in the assignments, defendant argued that the suit is premature and the issues will become ripe only if and when defendant files a foreclosure action. As we discuss below, defendant attached to its motion documents that show that plaintiffs and the loan servicer, Wells Fargo Bank, twice entered into loan modification agreements to extend the payment terms, but that the loan is now in default.

¶ 20. The superior court decided that the motion to amend was futile because it could not survive a motion to dismiss, essentially accepting defendant's arguments. With respect to the alleged violations of the PSA, it held that plaintiffs had no standing to enforce the PSA terms and that violations of the PSA were irrelevant to the enforceability of the note and mortgage against

---

[2] We note plaintiffs' observation on this point, but do not suggest that it affects the validity of the assignment. Apparently, it is common for MERS to designate an employee of the assignee as its agent to make the assignment. See E. Mendler, *Massachusetts Conveyencers' Handbook with Forms* § 20:32:50, at 2 (4th ed. 2013).

plaintiffs. With respect to the alleged defects in defendant's title to the mortgage, it held that the suit was premature because defendant did not need to prove its status until it sought to foreclose. The court noted that the defects were not, in any case, a ground for discharge of the mortgage, but instead only a defense to the foreclosure action, which defendant could cure.

¶ 21. The superior court also addressed plaintiffs' claim that defendant had violated the CFA by claiming that it could enforce the note and mortgage against plaintiffs. The court held that plaintiffs failed to show how the representation "could have been material or deceptive as it pertained to them." It also held that because plaintiffs cannot enforce the PSA, they could not make a CFA claim based on a breach of the PSA, and noted the federal cases that have so held.

¶ 22. Based on these allegations and stated causes of action, the trial court dismissed plaintiffs' complaint. On appeal, plaintiffs argue that the trial court erred in ruling that (1) plaintiffs, as mortgagors, have no standing to seek to invalidate an instrument because it violates the terms of a PSA; (2) plaintiffs' declaratory judgment action based on fraud was premature because defendant had not yet sought to foreclose; and (3) plaintiffs stated no claim under the CFA. They also appeal the trial court's failure to enter a default judgment against defendant MERS.

¶ 23. We review a motion to dismiss using the same standard as the trial court. "A motion for failure to state a claim may not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.) (quotations omitted). "We assume that all factual allegations pleaded in the complaint are true, accept as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 15 A.3d 122 (mem.) (quotation, brackets, and ellipses omitted).

¶ 24. We stress the very limited standard of review under the procedural posture in this case. As we discuss below, the standing questions on which the trial court relied are based, in part, on the substantive rights of the parties, which are generally unbriefed and unexplored and present complex questions of first impression.

Except to identify many of the issues, we largely leave their resolution to future proceedings, if any.

¶ 25. ■ There is an additional point about our review in this case. Although the case was decided essentially on a motion to dismiss, numerous documents and representations were presented by the parties. Generally, when additional material is presented in support of, or in opposition to, a motion to dismiss, the trial court is required to treat the motion to dismiss as a motion for summary judgment and notify the parties of the change in procedure. See V.R.C.P. 12(c); *Nash v. Coxon*, 152 Vt. 313, 314-15, 565 A.2d 1360, 1361 (1989). This did not happen here.[3] Essentially the parties added facts that they thought favored their position. Apart from the validity of those actions, the inevitable result is that we have a very incomplete picture of the circumstances of the parties, and this affects our ability to resolve the issues before us. As an overview of our decision, at least some of the issues in this case should have been resolved on a more complete record that could be presented only by summary judgment.

¶ 26. We begin with plaintiffs' request for declaratory judgment that defendant has no right to enforce the mortgage or the note. This question must be broken down into two components, for plaintiffs allege that the mortgage and note are unenforceable based on (1) violations of the PSA; and (2) fraud and irregularities in the chain of title. We first address the question of the violations of the PSA.

¶ 27. Defendant argues that plaintiffs, because they are neither parties to nor third-party beneficiaries of the PSA, lack standing to challenge assignments in contravention of that agreement. This has been the conclusion of the vast majority of courts that have considered this question.[4] See, e.g., *In re Correia*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (finding that an individual who is not

---

[3] We do rely, in the following discussion, on one of the documents attached to the motion to dismiss because it discloses that, in addition to the events alleged in the complaint with respect to the transfers of the note and mortgage, there is another story about defendant's collection activity and its exercise of positions under the note as part of those activities. These activities provide context under the standard that it is beyond doubt that no circumstances exist that could entitle plaintiffs to relief.

[4] Most of these cases have involved actual foreclosure actions commenced by banks, where mortgagors have alleged noncompliance with the PSA as a defense to foreclosure.

a party or a third party beneficiary of the PSA lacks standing to object to breaches of the PSA's terms); *Butler v. Deutsche Bank Trust Co. Americas*, No. 12-10337-DPW, 2012 WL 3518560, at *7 (D. Mass. Aug. 14, 2012) ("[A] mortgagor does not have standing to challenge a foreclosure on the basis of the non-compliance of an assignment with the provisions of the PSA governing a foreclosing trust."); *Abubo v. Bank of N.Y. Mellon*, No. 11-00312 JMS-BMK, 2011 WL 6011787, at *9 (D. Haw. Nov. 30, 2011) ("[E]ven assuming terms of the PSA were not followed, Plaintiffs may not set aside the assignment of the Mortgage . . . on that basis."); *Anderson v. Countrywide Home Loans*, No. 10-2685 (MJD/JJG), 2011 WL 1627945, at *4 (D. Minn. Apr. 8, 2011) ("Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA.").

¶ 28. ■ This is a question of first impression for this Court. While we ultimately agree with the conclusion of those courts cited above, a bit more elucidation is in order. We begin with the longstanding contract-law principle, applied by this Court in past decisions, that a plaintiff who is not a party to a contract does not have standing to challenge a breach of that contract. See *Bischoff v. Bletz*, 2008 VT 16, ¶ 16, 183 Vt. 235, 949 A.2d 420 (citing *Palmer v. Bahm*, 2006 MT 29, ¶ 13, 128 P.3d 1031, for the proposition that individuals who are "stranger[s] to a contract lack[ ] standing to bring an action for breach of that contract"); *Bryant v. Strong*, 141 Vt. 244, 245 n.1, 448 A.2d 142, 143 n.1 (1982) (noting that individual who was not a party to contract has no standing to challenge contract's validity); see also 13 S. Williston & R. Lord, A Treatise on the Law of Contracts § 37:1, at 5 (4th ed. 2000) ("[C]ourts recite talismanically . . . that 'strangers to a contract' have no rights under the contract.").

¶ 29. ■ While we have never so held, courts in other states have qualified this strong proposition in the case of assignment of debts, explaining that a debtor may challenge the assignment of his or her debt if it is void or entirely ineffective — even if that means allowing a "stranger to a contract" to assert reasons related to the breach of that contract. They have been careful to emphasize, however, that this exception does not allow a debtor to challenge an assignment of the debt that is merely *voidable*. See, e.g., *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) ("The law is settled that

the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only." (internal quotation omitted)); *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 831 (S.D. Tex. 2012) ("Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment *void or invalid*." (emphasis added) (citing *Tri-Cities Constr., Inc. v. American Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975)); *Bergquist v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-01303-AC, 2012 WL 3288859, at *5 (D. Or. Mar. 14, 2012) (identifying a "long-standing principle of contract law, that a debtor may assert as a defense any matter which renders the assignment *absolutely invalid or ineffective, or void*" (emphasis added) (quotation omitted)); *Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d 153, 161 (W.D. Va. 2011) (stating that plaintiff who is not a party to the assignment or an intended beneficiary can challenge a void but not a voidable assignment). We agree with this reasoning. We conclude therefore that plaintiffs can assert their claims based on violations of the PSA only if those violations rendered the assignment to defendant absolutely invalid for breach of the PSA provisions.

¶ 30. The obvious next step, then, is to determine whether the alleged violations of the PSA would serve to render the assignment of plaintiffs' mortgage and note void or merely voidable. We evaluate this question under New York law, which governs the trust in this case.

¶ 31. Plaintiffs argue that because of the alleged violations of the PSA the assignment of their mortgage to defendant as trustee for the trust is void. They base this argument on their understanding of New York trust law, particularly New York Estates, Powers and Trusts Law (EPTL), which states:

> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

N.Y. Est. Powers & Trusts Law § 7-2.4.

¶ 32. As an initial observation, the assignments to the trust of the note and the mortgage were signed by MNI and MERS,

respectively, and therefore would not seem to be in a strict sense actions of the "trustee," defendant. See *Deutsche Bank Nat'l Trust Co. v. Stafiej*, No. 10 C 50317, 2013 WL 1103903, at *4 (N.D. Ill. Mar. 15, 2013) (noting that because "[t]he assignment, which was not accompanied by proof that it followed the correct chain of assignment to get to the trust, was not filled out by the trustee; it was signed by an agent of . . . the original lender, . . . this court would find their attempt to void the assignment unpersuasive"). However, because plaintiffs allege in their complaint that defendant caused these assignments to be made, and because in any case defendant has clearly accepted the assignments, we will proceed under the assumption that defendant as trustee did in fact act in violation of the PSA.

¶ 33. ██ Unfortunately for plaintiffs, New York courts — while somewhat conflicted on the matter — generally find, despite the strong statutory language of EPTL § 7-2.4, that actions of a trustee in contravention of the trust are voidable rather than void. This issue was analyzed at great length by the Illinois Appellate Court in *Bank of America National Ass'n v. Bassman FBT, LLC*, 2012 IL App (2d) 110729, 981 N.E.2d 1. As explained by that court, under New York law, unauthorized actions by a trustee are ratifiable by the beneficiary of the trust and ratifiable actions are voidable rather than void. 2012 IL App (2d) 110729, ¶¶ 19-21; see also *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (App. Div. 1993) ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement."); *Aronoff v. Albanese*, 446 N.Y.S.2d 368, 370 (App. Div. 1982) (explaining that voidable acts may be ratified, but void acts may not). A recent New York case declined to find, at summary judgment, that a borrower's "debt was void under EPTL 7-2.4" because "defendant's submissions did not demonstrate as a matter of law" that the borrower — the trustee of a trust, who had executed the promissory note for the debt — "lacked actual or apparent authority to bind the Trust to the note." *Feldman v. Torres*, 939 N.Y.S.2d 221, 224 (App. Term 2011). This analysis makes clear, by reference to the doctrine of apparent authority, that the trustee's actions in contravention of the trust were not absolutely invalid.

¶ 34. ██ Of course, neither the Illinois Appellate Court nor this Court has the authority to finally interpret New York law, and the

use of the word "void" in EPTL § 7-2.4 is troubling. Nor, as *Bassman* points out, do all New York cases seem to agree that the acts of a trustee in contravention of a trust are voidable rather than void. 2012 IL App (2d) 110729, ¶ 23; see, e.g., *Knight v. Knight*, 589 N.Y.S.2d 195, 197 (App. Div. 1992) (suggesting that a "void assignment" cannot be ratified). However, a sufficient number of cases decline to find actions of a trustee in contravention of the trust void that we agree with the *Bassman* court that EPTL § 7-2.4 cannot be taken literally. We interpret the current state of New York law to be that a transfer into a trust that violates the terms of a PSA is voidable rather than void.[5] As that court explained, the "tension between these cases and the apparently plain language of section 7-2.4" is "for New York courts to reconcile — not this one." *Bassman*, 2012 IL App (2d) 110729, ¶ 21. While the New York courts have not yet made that "reconciliation," both state and federal courts in New York have found that nonparties to a PSA lack standing to challenge violations of the PSA by a trustee, suggesting that they agree with the *Bassman* analysis. See *Cimerring v. Merrill Lynch Mortg. Investors, Inc.*, No. 8727/2011, 2012 WL 2332358, at *9 (N.Y. Sup. Ct. June 13, 2012) ("Moreover, plaintiffs lack standing to allege a claim for breach of the PSA because they are not parties to this contract, nor do they allege that they are third-party beneficiaries to the agreement."); *Karamath v. U.S. Bank, N.A.*, No. 11 CV 1557(NGG)(RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) (magistrate decision) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment."), *report and recommendation adopted by* 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012). We therefore hold that plaintiffs do not have standing to challenge the assignments of the note and mortgage based on the perceived violations of the PSA in its assignment to the trust,

---

[5] Other courts have reached the same conclusion, albeit with little or no analysis of the underlying New York law. See, e.g., *Anderson*, 2011 WL 1627945, at *4 ("Plaintiffs have cited no authority that an assignment made in contravention of a PSA is invalid."); *Abubo*, 2011 WL 6011787, at *8 (finding that "noncompliance with terms of a PSA is irrelevant to the validity of the assignment"); *Bank of N.Y. Mellon v. Sakala*, No. CV 11-00618 DAE-BMK, 2012 WL 1424665, at *5 (D. Haw. Apr. 24, 2012) ("[T]his court as well as other courts have held that noncompliance with the terms of a PSA is not relevant to the validity of an assignment.").

because any such violations would render the assignments voidable rather than void.

¶ 35. We stress one result of our holding because it informs our analysis of the next issue (whether plaintiffs' allegations of fraud and irregularities in the assignment of the note and mortgage to defendant survive the motion to dismiss). In their prayer for relief, plaintiffs sought a declaratory judgment that defendant "does not now have, *and cannot now acquire*, rights to enforce the note." (Emphasis added.) Plaintiffs' claim that defendant cannot acquire a right to enforce the note in the future was based on provisions of the PSA and the timing of defendant's receipt of the note. By holding that plaintiffs cannot enforce the PSA, we have taken away this potential remedy against defendant.

¶ 36. We next turn to the second basis of plaintiffs' claim for declaratory judgment that defendant may not enforce the mortgage or the note: the presence of fraud and irregularities in the transfer of title of both instruments. The trial court found that these "allegations are premature because the holder of a note need not prove its status until such time as it seeks enforcement of the instrument." (Citing *Wells Fargo Bank Minn., N.A. v. Rouleau*, 2012 VT 19, ¶ 13, 191 Vt. 302, 46 A.3d 905; *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶ 14, 190 Vt. 210, 27 A.3d 1087.)

¶ 37. We conclude that the trial court viewed plaintiffs' circumstances too narrowly, at least in dismissing the case solely on the pleadings. In their amended complaint plaintiffs sought a declaratory judgment that defendant "does not have . . . rights to enforce the note" and "does not now have and never has had any right, title and interest" in the mortgage. The facts before the Court indicate that defendant's lawyer represented, in a letter to plaintiffs' counsel dated April 12, 2011, that defendant had the original note and an assignment of the mortgage. The letter stated: "The assignment will be recorded when the foreclosure action is started" and that "we believe that US Bank has proper standing to file the foreclosure action and enforce the terms of the Note and Mortgage." A year earlier, in March 2010, Wells Fargo sent plaintiffs a letter declaring the loan was in default and the note terms would be accelerated unless plaintiffs brought the payments current. There is no other information of record about plaintiffs' payment under the note, but we can infer from defendant's lawyer's statement that defendant was preparing for foreclosure. Plaintiffs allege that they want to sell the property covered by the mort-

gage, but cannot convey title "because they are unable to determine which person, if any, has the authority to enforce the note."[6]

¶ 38. ▇▇▇ Vermont has adopted the case-or-controversy requirement of the federal courts, and this requirement "incorporates the doctrines of standing, mootness, ripeness, and political question." *Brigham v. State*, 2005 VT 105, ¶ 9, 179 Vt. 525, 889 A.2d 715 (mem.). In a declaratory judgment action, "[t]he availability of declaratory relief turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest." *Town of Cavendish v. Vt. Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982). The case-or-controversy requirement does not disappear because of the case's declaratory nature: "Unless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render." *Doria v. Univ. of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 318 (1991). Specifically for our purposes, the issue in a declaratory judgment action "must not be premature, in that it must be a necessary part of the final disposition of the case to which it pertains." *Wood v. Wood*, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977). Thus, "an action for declaratory relief must be based on an actual controversy; the claimed result or consequences must be so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected." *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46-47 (1974).[7]

¶ 39. Defendant argues that because no party has initiated foreclosure proceedings against plaintiffs, their claim is premature — i.e. not ripe — because plaintiffs have not yet suffered any harm

---

[6] Defendant answered this allegation that plaintiffs can pay Wells Fargo, the servicing agent specified in the PSA. In its brief, defendant notes that plaintiffs have not alleged that any other entity claims ownership of the loan.

Plaintiffs note in their brief that the home covered by the mortgage has been contaminated by an oil spill and is worth only $41,000 and they want to extinguish the mortgage to obtain financing for a new home.

[7] Plaintiffs also suggest that the rules of ripeness and standing are not the same in this case as others because it is styled as a quiet title action — the "injury," presumably, being the cloud on their title. Although they do not flesh out this argument in their brief, they explained in their memorandum of law in opposition to defendant's objection to allow the second amended complaint that "[a]s this is a quiet title action, there is no requirement that Plaintiff do nothing until Defendant decides to foreclose." Since we conclude that plaintiffs can maintain the case, at this stage, as a declaratory judgment action, we do not consider this argument.

from the alleged fraud and irregularities in the chain of title, and indeed may never suffer any harm. Therefore, it argues that there is no live controversy, and any decision on our part would be a purely advisory decision, which we are not authorized to issue. See *State v. M.W.*, 2012 VT 66, ¶ 12, 192 Vt. 198, 57 A.3d 696 (finding "no ripe controversy" where "there is no injury to be addressed" and therefore only "a purely hypothetical legal question").

¶ 40. We acknowledge that other courts, mostly federal, have accepted this argument. The United States District Court for the District of Vermont found in an unpublished opinion, *Ciccotelli v. Washington Mutual, Inc.*, No. 5:10-cv-16 (D. Vt. Feb. 4, 2013), that a pre-foreclosure suit by the mortgagor to challenge the note and mortgage was premature such that the plaintiff lacked standing. Relying upon *Young v. Wachovia Mortgage Co.*, No. 11-cv-01963-CMA, 2011 WL 6934110 (D. Colo. Dec. 30, 2011), it concluded that plaintiff sought an advisory opinion that it could not give. *Id.* at *5; see also *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735-36 (E.D. Mich. 2010).

¶ 41. We find these decisions to be inconsistent with the purpose of the Declaratory Judgments Act, 12 V.S.A. chapter 167. This case has reached the point of a clear controversy between the parties. Plaintiffs are obligated to make payments over time, and defendant's agent has declared them to be in default. We can infer, for purposes of this motion to dismiss, that the agent has accelerated the note requiring plaintiffs to pay the entire amount to avoid an adverse judgment and probably foreclosure. Its letter indicates that it is assessing late charges because of plaintiffs' failure of timely payment.

¶ 42. ▮ This case is similar to the early declaratory judgment case of *Gifford Memorial Hospital v. Town of Randolph*, 119 Vt. 66, 118 A.2d 480 (1955), where the plaintiff hospital sought a declaratory judgment against the town that it was exempt from property taxes. The town argued that the action was premature and that the plaintiff had an adequate remedy to recover taxes paid under protest or to appeal the assessment. We answered that the purpose of a declaratory judgment action was to overcome these objections:

> The act has not enlarged the jurisdiction of the court over the subject matter or the parties. It has, however,

opened to prospective defendants and to plaintiffs at an early stage of the controversy a right to petition for relief not heretofore possessed. In that sense, it has decidedly extended the power of courts to grant relief in cases otherwise within their jurisdiction to pass upon. . . .

. . . .

Here the facts are set forth sufficiently so they show that an actual controversy exists. The listers have ·appraised the property and a tax has been assessed against the plaintiff. It can reasonably be expected that the town through its proper officers will proceed to collect the tax if it is not paid when due. In fact the plaintiff so alleges. If the plaintiff had to wait until proceedings are brought or threatened to collect the tax, it would be subject to costs and penalties for not paying the tax when due. That would defeat the very purpose of the act.

*Id.* at 70-71, 118 A.2d at 483 (citations omitted). As to the alternative remedies, we held that a proceeding for a declaratory judgment is available even though other remedies are also available, as long as the judgment will "terminate the uncertainty or controversy giving rise to the proceeding." *Id.* at 71, 118 A.2d at 484.

¶ 43. On the limited state of the record, this case is controlled by *Gifford Memorial Hospital.* Defendant, through its agent, has declared a default, and "it can reasonably be expected" that it will bring some form of action to collect the amount due on the note. Meanwhile, defendant is enforcing the note by demanding payment, declaring a default, accelerating the payment terms and seeking late charges. Plaintiffs allege that they have defenses to defendant's enforcement of the note such that they can avoid these consequences. Rather than waiting for defendant to bring an action, they choose at an "early stage of the controversy" to petition for relief.[8] As in *Gifford Memorial Hospital,* the availability of other remedies — here defending against an action on

---

[8] There is another reason why plaintiffs would want to bring suit rather than responding to defendant's enforcement action when it comes. As discussed in ¶ 53, *infra,* plaintiffs' claims with respect to the note are, essentially, that it was stolen through an unauthorized and forged endorsement. Normally, an obligor under a negotiable instrument may pay a person who can enforce the instrument, and receive credit for that payment, even though the obligor knows that another has

the note or a foreclosure action — does not prevent their bringing of a declaratory judgment action. See *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 192 (Tex. Ct. App. 2011) (holding that mortgagor facing foreclosure can bring a declaratory judgment action against entity alleging right to foreclose by alleging that entity did not own promissory note); cf. *Harper v. Brown, Stagner, Richardson, Inc.*, 873 So. 2d 220, 225 (Ala. 2003) (using similar standard and emphasizing that purpose of Alabama's Declaratory Judgment Act is to "enable parties between whom litigation is inevitable to have the issues speedily determined," holding that alleged debtor can seek declaratory judgment against creditor that he does not owe debt).

¶ 44. Defendant responds that this case is different because a declaratory judgment here will not "terminate the uncertainty or controversy" since plaintiffs owe the amounts specified in the note to some entity, whether or not it is defendant. As the superior court put it, plaintiffs are not entitled to a "free home"; the best they could obtain is the " 'ephemeral victory' of a dismissal of the foreclosure complaint against them without prejudice." As noted above, the limitation of remedy is the consequence of plaintiffs' lack of standing to enforce the PSA.

¶ 45. Much of defendant's argument is based on its assertion that it wasn't required to possess the note and mortgage until it brought a foreclosure action and that defendant controls the timing of such an action. In making this argument, defendant relies upon, but overreads, our decisions in *Kimball* and *Rouleau*. In *Kimball*, the plaintiff bank brought a foreclosure action and the defendant argued that the bank did not have standing to bring the action because it did not hold the note and mortgage at the time it filed the foreclosure action. We agreed that the plaintiff had to demonstrate that it had the right to enforce the note at the time the foreclosure action was filed and affirmed the dismissal of the complaint for failing to meet that burden. *Kimball*,

---

a claim to the instrument. U.C.C. § 3-602(a); 9A V.S.A. § 3-602(a). In those circumstances, the obligor faces no risk of double payment. There is an exception, however, if the obligor "knows that the instrument is a stolen instrument and pays a person it knows is in wrongful possession of the instrument." 9A V.S.A. § 3-602(b)(2). Plaintiffs allege that the instrument is stolen and, if proved, could be charged with that knowledge. They bear a risk if they make payments to defendant's service agent; a declaratory judgment action can determine if the risk is real.

2011 VT 81, ¶¶ 13-15. We held, however, that the dismissal was without prejudice so that the plaintiff could refile when it possessed the note and was able to prove that element. *Id.* ¶¶ 22-23.

¶ 46. In *Rouleau*, the plaintiff, assignee of a note and mortgage, sought to enforce a personal guaranty of the note and mortgage. We held that the holder of the note can enforce the guaranty. *Rouleau*, 2012 VT 19, ¶ 15. In doing so, we held that Vermont law does not require the holder of the note to establish a chain of title for the note. *Id.* ¶ 13.

¶ 47. Defendant argues that these cases mean that it has no obligation to hold the note prior to bringing a foreclosure action, and it must control the timing of bringing any such action. It argues that plaintiffs' preemptive strike is an impermissible attempt to obtain a decision that it cannot foreclose because it doesn't hold the note at the time of plaintiffs' action. We do not read *Kimball* or *Rouleau* as having any relevance to our decision, apart from the holding in *Kimball*, discussed above, that a mortgagee can cure a deficiency in its standing to bring a foreclosure action. As we point out above, a mortgage foreclosure action or suit on a note represent a judicial collection method after certain procedural steps are taken and attempts are made at nonjudicial collection. Assuming the controversy has become ripe and the adverse consequences for the mortgagors are reasonably to be expected, we see no right in the mortgagee to prevent a preemptive action by plaintiffs and delay its formal judicial collection action. Neither *Kimball* nor *Rouleau* gives defendant exclusive control over the timing of judicial intervention.

¶ 48. While we reject the bulk of defendant's argument on standing, we recognize that some courts have found no standing on the rationale we employed with respect to the PSA and have added that plaintiffs have no interest in whom they are obligated to pay, only whether they pay and whether the payment is properly credited against their legal obligation. There is a difference, however, between challenging compliance with the PSA and challenging the assignments of the note and mortgage to defendant as fraudulent and irregular. As we held above, plaintiffs cannot rely on the terms of the PSA to challenge defendant's actions or status, whether raised offensively, as here, or raised in defense to a suit on the note or a foreclosure action.

¶ 49. What is labeled as a lack of standing is actually a decision that the governing substantive law offers no relief. If, however, a

mortgagor could obtain relief under a different procedural vehicle — for example, in a defense to a suit to enforce the note or a foreclosure action — the rationale for this theory of lack of standing would evaporate. This is the holding of the recent decision of the U.S. Court of Appeals in *Culhane v. Aurora Loan Services*, 708 F.3d 282, 291 (1st Cir. 2013). In *Culhane*, the court explained that:

> There is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law. We hold, therefore, that a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee.

*Id.* at 291; see also *U.S. Bank Nat'l Ass'n v. Ibanez*, 941 N.E.2d 40 (Mass. 2011) (creating the state law protection relied upon by *Culhane*).

¶ 50. We must look to Vermont law to determine whether plaintiffs have a defense to enforcement of the mortgage. In doing so, we are looking only at whether plaintiffs presented at least one viable theory of relief. The trial court did not base its decision on the viability of plaintiffs' claims, if properly presented; it ruled only on standing. Neither party has briefed here the merits of plaintiffs' claims in view of the trial court decision. Thus, our analysis of the merits is very limited.

¶ 51. Because we have ruled that the mortgage follows the note, we look first at the note. The parties concede that the note is a negotiable instrument, governed primarily by Article 3 of the Uniform Commercial Code. Under UCC § 3-301, 9A V.S.A. § 3-301, the following parties can enforce a negotiable instrument:

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or 3-418(d) of this title.[9] A person may

---

[9] In their amended complaint, plaintiffs allege that defendant cannot enforce the note because it is not a holder in due course, it obtained the note by a fraudulent endorsement and some other person or entity "may be the owner of the Note." We agree, assuming that the allegations in the complaint are true, that defendant

> be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

9A V.S.A. § 3-301. Generally, a person becomes a holder through negotiation based on transfer of possession. *Id.* § 3-201. Negotiation is effective even if obtained by fraud, duress, or mistake, or in breach of duty or as part of an illegal transaction. *Id.* § 3-202(a). "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument . . . ." *Id.* § 3-203(b). However, a person taking an instrument "is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds." *Id.* § 3-306.

¶ 52. Essentially, plaintiffs rely upon claims recognized by § 3-306. In making such claims, however, they face a large obstacle in Article 3's provision that a stranger to a contract cannot enforce it, the principle we relied upon above to hold that plaintiffs could not enforce compliance with the PSA. Section 3-305(c) provides that an "obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (§ 3-306) of another person," with certain exceptions. 9A V.S.A. § 3-305(c). Plaintiffs' claims involve attempts to enforce rights of an earlier holder of the note, and are barred by this provision unless an exception applies. The only relevant exception is where "the obligor proves that the instrument is a lost or stolen instrument." *Id.*

¶ 53. ▮ While plaintiffs' complaint did not use the terms "lost" or "stolen," their allegations are consistent with this theory. The complaint alleges that the note was fraudulently acquired by defendant, based on a fraudulent endorsement with a forged endorsement signature, that was created by defendant. These

---

would not be a holder in due course. See UCC § 3-302(a)(2) (stating that holder must have taken instrument "in good faith" and "without notice that the instrument contains an unauthorized signature or has been altered"); 9A V.S.A. § 3-302(a)(2). But, the purpose of holder in due course status is not to create a right to enforcement, but to limit defenses an obligor can raise. See *id.* § 3-305(b). Defendant can enforce as a holder. *Id.* § 3-301. We discuss the allegation of the fraudulent endorsement in ¶ 53, *infra.* As we also discuss in ¶ 52, the fact that someone else owns the note is not a defense absent the specific circumstances in the exception in § 3-305(c).

allegations are sufficient to give plaintiffs standing.[10] The court erred in dismissing Counts 1 and 2 of the amended complaint for lack of standing, to the extent that these counts alleged irregularities in the transfer of the note and mortgage unconnected to the pooling and servicing agreement.

¶ 54. Next, we turn to plaintiffs' consumer fraud claim. This claim is based on the representation by defendant, in a letter through local counsel of April 12, 2011, that defendant was in possession of plaintiffs' original note and mortgage. The letter states that "we believe that US Bank has proper standing to file the foreclosure action and enforce the terms of the Note and Mortgage." The amended complaint alleged that defendant's "assertion of perfected ownership rights, title and interest in the Note and Mortgage is fraudulent and an unfair and deceptive practice in commerce." The trial court dismissed this claim because "plaintiffs have not explained how such a statement could have been material or deceptive as it pertained to them." We affirm, but for another reason.

¶ 55. ▮▮▮ In arguing that they have stated a claim on which relief can be granted, plaintiffs list three "requisites" for a consumer fraud claim that they have edited somewhat from our decision in *Jordan v. Nissan North America, Inc.*, 2004 VT 27, 176 Vt. 465, 853 A.2d 40, and they argue that their complaint alleges enough to meet all of those requisites. In bringing a private consumer fraud action under 9 V.S.A. § 2461(b), plaintiffs focus on the first requirement — that the act itself must be either "unfair" or "deceptive" so as to be rendered illegal by 9 V.S.A. § 2453, to which § 2461 refers. "Unfair" acts and "deceptive" acts each have their own tests that we have defined through our case law, both of which are considered objectively. See *Carter v. Gugliuzzi*, 168 Vt. 48, 56, 716 A.2d 17, 23 (1998) (test for "deceptive" acts); *Christie v. Dalmig*, 136 Vt. 597, 601, 396 A.2d 1385, 1388 (1979) (test for "unfair" acts). The appropriate test here — correctly identified, at least approximately, by plaintiffs — is that for a "deceptive" action.[11]

---

[10] These allegations also create a risk of double payment. See n.8, *supra*.

[11] Confusingly, plaintiffs' brief begins its section on consumer fraud with the test stated in *Carter*, 168 Vt. at 56, 716 A.2d at 23, as repeated in *Jordan*, 2004 VT 27, ¶ 5, and then references the test of *Christie*, 136 Vt. at 601, 396 A.2d at 1388, for "unfair" acts, without explaining the relation between the two. Given the facts

¶ 56. ■■■ There is, however, a second requirement that plaintiffs do not address. The section of the statute providing for a private right of action is § 2461(b), which requires a "consumer" to show either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act. If a plaintiff, in bringing a consumer fraud action, either fails to allege facts that meet the definitions of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to demonstrate the prerequisites to a private action, as we have itemized above under 9 V.S.A. § 2461(b), the case is properly dismissed.

¶ 57. We will focus on the prerequisites for a private action under 9 V.S.A. § 2461(b), and because we find that plaintiffs do not meet these requirements, we need not look at 9 V.S.A. § 2453. Specifically, we look at the second prong of § 2461(b), because plaintiffs cannot have relied on this letter to contract for goods or services, as it was sent long after the purchase. Our only question thus becomes: assuming that defendant's statement regarding its belief that it had the right to enforce the mortgage and note was indeed deceptive, did plaintiffs suffer damages or injury from this act?

¶ 58. ■■■ The consumer fraud claim is closely connected to the other claims in this action. Assuming defendant can enforce the note and mortgage, defendant has not engaged in deception by stating its prevailing legal position. Thus, the claim here is derivative of plaintiffs' main claims that defendant cannot enforce either the note or the mortgage. Even if defendant cannot enforce either the note or the mortgage, it is not clear how plaintiffs are injured by defendant's statement of its failed position, since plaintiffs are still liable on the note and mortgage, either to another or to defendant after it has cured the deficiency that stood in the way of its enforcement. While we can speculate on the enforcement actions another holder of the note and mortgage might have taken, plaintiffs have failed to make any allegations that they would be better off with another holder.

¶ 59. Plaintiffs do not offer an explanation as to what injury or damages the letter caused, as they do not address the requirements of § 2461(b) at all. Indeed, the complaint seeks neither damages nor an injunction, the remedies authorized by § 2461(b).

---

alleged, however, it is clear that it is the test for "deceptive" acts that applies in this case.

Instead it seeks a declaratory judgment that defendant "violated Vermont Consumer Fraud Law." We read the complaint as seeking a declaratory judgment that defendant violated § 2453, without having to prove entitlement to a private remedy under § 2461(b).

¶ 60. Decisions from other jurisdictions (although their consumer fraud statutes vary from Vermont's to a greater or lesser degree) are instructive in deciding whether making false or misleading representations regarding a debt — without any other demonstrated harm to the consumer — can cause injury for the purposes of bringing a private CFA claim. Two Connecticut federal cases, for example, hold that it cannot. See *Gervais v. Riddle & Assocs.*, 479 F. Supp. 2d 270, 279-80 (D. Conn. 2007) (deciding that false communications from a debt collector, with no associated damages, do not meet the "ascertainable loss" requirement for a private action under the Connecticut consumer fraud statute); *Goins v. JBC & Assocs.*, No. 3:02CV1069 (MRK), 2004 WL 2713235, at *3 (D. Conn. Nov. 24, 2004) (same).

¶ 61. A line of cases from Massachusetts seems superficially to help plaintiffs: the Massachusetts Supreme Judicial Court has held that the mere " 'invasion of any legally protected interest,' " even without a financial injury, is a form of injury under the consumer fraud statute. *Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 534 (Mass. 2006) (quoting *Leardi v. Brown*, 474 N.E.2d 1094, 1101 (Mass. 1985)). Making a false representation regarding a debt might be interpreted to constitute an invasion of a legally protected interest. However, the court clarified that such an invasion must place the plaintiff in a "worse and untenable position than they would have been" if the invasion of the legally protected interest had not occurred. *Id.* The U.S. District Court for the District of Massachusetts has found that a "demand for payment of a debt that a consumer did not owe" fit within that framework, *Gathuru v. Credit Control Services, Inc.*, 623 F. Supp. 2d 113, 123 (D. Mass. 2009), but that situation is very different than the one at hand — in *Gathuru*, the claim was for fees that had not been incurred. Here, plaintiffs do not allege that violations occurred because of defendant's collection activities or its agent's declaration of default or of how much was owed on the note. Instead, it alleges that the violation was based on the letter under which defendant stated its legal position that, as a holder of the note and mortgage, it had the right to enforce. The

Massachusetts cases are therefore no help to plaintiffs in establishing an injury for the purpose of the CFA.

¶ 62. Plaintiffs have not established an injury for the purposes of standing under 9 V.S.A. § 2461(b). Because we affirm the dismissal based on standing, we need not enter into a discussion as to whether the sending of the letter by defendant, through its attorneys, constituted a deceptive act under 9 V.S.A. § 2453.

¶ 63.　　Finally, we deal briefly with the question about whether the trial court erred in not entering a default judgment against MERS. As noted above, in denying plaintiffs' motion, the trial court noted that because the case was a declaratory judgment action "in which relief granted as against one defendant may have significant effects on the rights of others," default judgment was not appropriate "until all parties have been added, served, and have had time to file answers." It added, however, that plaintiffs were free to renew their motion for default judgment after those conditions were satisfied. The plaintiffs have never renewed their motion. The trial court did not err, therefore, in failing to enter a default judgment against MERS.

*Affirmed as to dismissal of Counts 3 and 4 of plaintiffs' proposed amended complaint; reversed and remanded with respect to dismissal of Counts 1 and 2 of plaintiffs' proposed amended complaint for further proceedings not inconsistent with this decision.*